EUGENIA CHISWELL

*vs.*

CHARLES E. NICHOLS.

*Negligence—Automobile Collision—Negligence of Passenger—*
*Question for Jury—Instructions—Statutory*
*Traffic Regulations.*

The negligence of the driver of an automobile cannot be
imputed to an invited guest therein for the purpose of defeat-
ing her right of recovery for personal injuries.          p. 303

In an action for injuries received by plaintiff as the result
of a collision between the automobile in which she was riding
as a guest and defendant's automobile, *held* that it was for the
jury to determine whether plaintiff was guilty of contributory
negligence in failing to observe defendant's automobile, imme-
diately before the accident, as it approached on an intersecting
road, and to notify the driver of the automobile in which she
was riding.          p. 305

That the statute (Code, Art. 56, Sec. 163) gives the right of
way to vehicles approaching at intersecting roads from the
right, and so imposes upon the driver of a vehicle the duty of
looking carefully for vehicles approaching the intersection from
his right, does not relieve him of the necessity of observing the
condition of the road to his left, with a view of ascertaining
whether the road is clear and free of persons and vehicles
approaching from that direction.          pp. 305, 306

In an action for personal injuries received by plaintiff as the
result of a collision between the automobile in which she was
riding and defendant's automobile, at the intersection of two
roads, *held* that there was evidence of negligence on defendant's
part sufficient to go to the jury.          p. 307

A prayer instructing the jury that the negligence of the
driver of the automobile in which plaintiff was riding could
not be imputed to plaintiff, for the purpose of barring recovery
by her, *held* open to criticism as failing to inform the jury that
plaintiff could not recover if guilty of negligence directly con-
tributing to the accident.          p. 307

In an action for personal injuries resulting from a collision between defendant's automobile and that in which plaintiff was riding, *held* that it was not proper to direct the jury to find a verdict for plaintiff if they found that defendant had not complied with certain traffic rules or regulations provided by the statute, such a direction not permitting the jury to consider the facts and circumstances under which defendant failed to comply therewith, if he did so fail.                                    p. 307

*Decided December 3rd, 1920.*

Appeal from the Circuit Court for Frederick County (WORTHINGTON, J.).

The plaintiff submitted the following prayers:

*Plaintiff's First Prayer.*—If the jury find that on or about the 4th day of December, 1919, the plaintiff was injured by the automobile of the defendant, while being operated by him, and that said injury resulted directly from the want of ordinary care and prudence on the part of the defendant, and not from the want of ordinary care and prudence on the part of the plaintiff, directly contributing to the injury then the plaintiff is entitled to recover.   (*Rejected.*)

*Plaintiff's Second Prayer.*—That if the jury find the facts set forth in the plaintiff's first prayer, and further find that at the time of the injury therein referred to, plaintiff was a guest in the automobile of Stanley J. Wood, and that she exercised no control over the driving and management of the same, but that said automobile was driven and controlled by said Wood; then even if they find that said Wood was guilty of negligence in the manner in which he managed and drove said automobile, which contributed to the happening of the accident, the negligence of the said Wood cannot be imputed to the plaintiff, and forms no bar to the right to recovery of the plaintiff in this case.   (*Rejected.*)

*Plaintiff's Third Prayer.*—The plaintiff prays the court to instruct the jury that under the law of this State all vehicles about to turn from the road upon which they are traveling

into any intersecting road shall gradually reduce their speed to a point not exceeding twelve miles an hour for a distance of not less than 25 feet before beginning to make such turn, and at the intersection of public highways all vehicles shall keep to the right of the centre of such highways and pass to the right of the centre of such intersection when turning to the left, and if the jury shall find that the defendant did not comply with these provisions of law and that as a result of his failure to comply with the same the plaintiff was injured without any fault upon her part thereto contributing if they shall so find then their verdict shall be for the plaintiff. (*Rejected.*)

*Plaintiff's Fourth Prayer.*—If the jury shall find a verdict in favor of the plaintiff, then in estimating the damages they are to consider the health and condition of the plaintiff before the injury complained of, as compared with her present condition in consequence of said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable her from engaging in those employments for which, in the absence of such injury, she would have been qualified; and also the physical and mental suffering, if any, to which she was subjected by reason of said injury, and to allow the plaintiff such damages as in the opinion of the jury will be a fair and just compensation for the injuries which she has sustained. (*Rejected.*)

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*John S. Newman* and *Leo Weinberg,* for the appellant.

*Reno S. Harp* and *Milton G. Urner,* for the appellee.

PATTISON, J., delivered the opinion of the court.

Eugenia Chiswell, the appellant, sued Charles E. Nichols, the appellee, to recover damages for personal injury sustained by her in an automobile collision caused by the alleged neg-

ligence of the appellee. The judgment being for the appellee, she has appealed to this Court.

At the conclusion of the evidence taken in the trial of the case below, a number of prayers were offered by the plaintiff, as well as by the defendant, but only the defendant's second and third prayers, directing a verdict for him, were granted; one because of the contributory negligence of the plaintiff, and the other for a want of legally sufficient evidence entitling the plaintiff to recover. The ruling of the court upon the prayers is the only exception in the record.

The record discloses that the plaintiff, a resident of Licksville, Frederick County, Maryland, upon the invitation of Stanley J. Wood, a merchant of Licksville, on the 4th day of December, 1919, rode with him in an automobile, owned and driven by him, to the town of Frederick. On their return home, in the afternoon of that day, after passing through Buckeystown, and while proceeding southward on the concrete road to Licksville, they collided with the defendant's car at or near the intersection of that road by the Adamstown road.

The plaintiff at the time of the accident was seated on the front seat of the automobile, a Ford touring car, to the right of the driver, Mr. Wood. There was in the car a quantity of oysters and merchandise, weighing four or five hundred pounds.

The defendant, with Mrs. Eugene Wachter, had, on the day of the accident, ridden in a Page automobile, owned and driven by the defendant, from their homes in Buckeystown to Adamstown, and at the time of the accident were returning from Adamstown to Buckeystown. The Adamstown road, over which they traveled in returning to Buckeystown, approached the Buckeystown road from the west, and was from one and one-half feet to three feet lower than the Buckeystown road. The ascent from the former to the latter started a short distance west of the Buckeystown road.

Immediately before the accident the plaintiff was upon the Buckeystown road moving south thereon towards its inter-

section with the Adamstown road, while the defendant was on the Adamstown road going east to said point of intersection, and the collision occurred at or near said intersection.

The evidence discloses that there was nothing to obstruct the view of either, at any point within a quarter to a half mile of the intersection, from seeing the other as he or she approached that point, more than a post or rail fence upon the side of the road. It is further shown from the evidence that upon the east side of the Buckeystown road, opposite the center of the Adamstown road, was a milk station or stand.

Stanley J. Wood, the owner and driver of the automobile in which the plaintiff was riding, in giving an account of the accident, said it was "about half past three in the afternoon," the sun was shining "in my eyes, shone on the windshield, and I could not see anything on the side to amount to anything. I was looking straight ahead; on the side the glare of the windshield kept me from seeing anything coming from that side. I was just going along, didn't know I had come to that road (Adamstown road). * * * When I came to my senses, I was standing up on the pike." "When did you see the Nichols car with reference to the accident?" Ans. "I never seen it until the very moment it struck me. When the collision came I just seen something black come before me and everything was dull, I didn't know nothing." The witness testified that he frequently travelled the road from Licksville to Buckeystown road, and knew about where it came into the Buckeystown road. He further testified that, at the time of the accident, he was going between twenty and twenty-five miles an hour. He had no speedometer, but was not going over twenty-five miles an hour. The Nichols car, he said, struck his car between the front and rear doors and "drove it across the pike over against the milk stand and smashed it down." Upon cross-examination, he testified there was nothing between the Buckeystown road and the Adamstown road to prevent him from seeing anyone travelling on the last named road, but on the day of the accident

he could not see because the sun was shining in his eyes. He said, "it was difficult driving; it did not occur to me I was there at that road."

The plaintiff testified that, at the time of the accident, the car in which she was driving was going between twenty and twenty-five miles an hour. When asked to tell the jury what, if anything, she knew about the accident, she said: "We passed Mr. De Garmendia's car directly outside of Buckeystown, and we seemed to be riding about four or five minutes, when all at once I came to on the pike there, and I couldn't imagine what had happened; we were going at a good steady rate." "Did you see the Nichols car collide with the Wood car?" Ans. "No." "Tell the jury what you were doing as you were going along the road." Ans. "As we passed Mr. De Garmendia's car, Mr. Wood said, 'that is Mr. De Garmendia. I know him by his hat.' I said, 'Yes, I know him by his number'; and we drove along then quietly, nothing more was said." "Could you see the Adamstown road?" Ans. "Yes, sir; I could see it fairly well, but not very well because of the sunlight." "Was the sun shining on the shield?" Ans. "Yes, sir; seemed to be shining in front of the car there." She did not see the Nichols car, though there was no obstruction "along there at the intersection of the road," more than the post and rail fence. She was seated on the right side of the car, the side from which the Nichols car approached. There were no curtains upon that side of the car. She knew where the Adamstown road came into the Buckeystown road. She had often passed up and down that road. She was then asked, "Did you look in the direction of the Adamstown road going down?" And she answered: "I had been glancing to the right some." "You didn't look particularly at the Adamstown road?" "No. I saw where the road came out by the fence just before we got to the Adamstown road." She did not see Mr. Nichols' car at any time before the accident. Mr. Wood's car, at the time of the accident was in the middle of the road. She was asked: "Were you giving especial attention to the Adamstown road

to see if anything was coming down there?" Ans. "No, I was looking casually about now and then as best I could." "The sun was in your eyes?" Ans. "Yes, sir."

Carlos De Garmendia, a farmer near Tuscarora, Maryland, testified that he was returning home from Frederick, on December 4th, 1919, and when he had reached a point just beyond Buckeystown, about three o'clock in the afternoon, Mr. Wood passed him. The witness' wife was with him in the car, sitting to his right on the front seat, and Glenn Washington, a colored man, an employee of witness, was sitting on the rear seat. In speaking of the Adamstown road, he said "it came into the Buckeystown road almost at right angles." The acute angle, however, is on the south side of the Adamstown road. In answer to a question asked by the court, the witness said, "there is a telephone line and an electric line on both of those roads." He further stated that, after Wood passed him down the pike, he was behind him all the way to the scene of the accident, and at the time of the collision was about one hundred yards from him. He was then asked to tell what he saw of the collision. His answer was: "As Wood approached the Adamstown road, and when almost there, a car came out and had taken this direction coming on to the pike, cut the corner, and almost instantly after its appearance on the pike crashed into the Wood car, lifted it, carried the car forward diagonally two or three car lengths, and the Wood car came to rest right against the milk stand right against the fence, the milk stand being almost directly opposite the end of the Adamstown road. They struck and while in contact, went forward diagonally and stopped at the milk stand." Wood at the time of the accident was in the middle of the road, and his car (Wood's) was struck "from the middle of the car forward." When the collision occurred, the witness got out of his car and went over to the plaintiff, who was lying on the ground unconscious, and Wood at the time was crying, 'Oh, it was not my fault.' He then saw Nichols, and said to him "It is you, isn't it awful," and he (Nichols) said, "My God, I never

saw him until I struck him. I jammed my brakes, but it was
too late." The witness did not hear any horn blown by
Nichols, but stated that because of the distance he was away
from him he probably could not have heard him. Nor could
he say how fast Nichols was going at the time of the collision.
"It was simply an appearance and a crash."

Upon cross-examination, he testified that had he looked,
he could have seen across the Adamstown road. The Wood
car, he thought, was not exceeding twenty-five miles an hour
at the time of the accident. Mrs. De Garmendia, who, as
we have said, was with her husband, testified that Mr. Wood
was going at the time of the accident from twenty to twenty-
five miles an hour, and this was his speed from the time he
passed them until the time of the collision. She was asked
to state to the jury, what she saw of the accident. She an-
swered saying: "As Mr. Wood approached the point where
the Adamstown road comes into the Buckeystown road, I saw
a car coming along the Adamstown road at what I consid-
ered a very excessive speed for anyone going to turn, and I
kept my eyes right on it, and all at once I saw him swing
the corner and strike Mr. Wood, a terrible explosion, and
then the two cars went forward diagonally and stopped at
the milk stand. I didn't pay much attention to Mr. Nichols'
car but it was still pointed at the Wood car." "How fast
would you say Mr. Nichols' car was travelling when he came
out there on the pike?" Ans. "I should judge at least twen-
ty miles an hour, which is fast for anyone going to make a
turn. It would be a moderate speed for anyone on a straight
pike, but for anyone approaching a turn, it seems a dan-
gerous speed. He swung right around and just struck rather
a little obliquely, but all I saw was the broad side of the
car. * * * The road is wide and he came right around close
to the fence, as near as he could to the fence, as he was still
on the concrete, just followed the concrete around." She too
heard Wood say that it was not his fault.

Upon cross-examination, she stated that she saw Nichols
car coming at a point half a square from the intersection of

the road. She did not notice that he reduced his speed, "he seemed to be coming along as if he was not approaching a turn at all." In answer to a question of the court, she said that her husband gave "his entire attention to the road," while she "was glancing about." The sun, she said, was "very trying," and when so glancing about, she shaded her eyes with her hand. It was in this manner that she saw Nichols on the Adamstown road.

Glenn Washington, the man riding on the rear seat in the Wood car, said Wood, at the time of the accident, was going at about twenty-five miles an hour, and at such time the car in which he, the witness, was riding was about one hundred yards behind him. He was sitting on the right side of the automobile, and saw Mr. Nichols' car upon the Adamstown road. When he first saw him, he was three-quarters of a mile from the intersection of the roads, and "was coming at a pretty good rate of speed, about twenty miles an hour." He was then asked: "Did you see him when he came out on the Buckeystown road," and he replied "Just as I took my eye off him, I saw the car raise Wood's car up." "Did Mr. Nichols slacken his speed any?" Ans. "It didn't look like it slowed up any." "How did he come up on the Buckeystown pike?" Ans. "I will say he came up on the pike then and kind of made a little sharp turn there." "What do you mean by a little sharp turn?" Ans. "Didn't pull out wide like he should have done." He then described the collision, as heretofore described by Mr. and Mrs. De Garmendia; and he said that he heard the statements made by Wood and Nichols, as stated by De Garmendia.

On cross-examination he was asked, how long he continued to look at Nichols' car when he saw it on Adamstown road. He answered saying, "I seen it clean until he got up there." "You said in answer to Mr. Newman's question, you took your eyes off of it, and the next thing you saw was Wood's car rise up." Ans. "I don't think I said that. No, sir." "What was it you said?" Ans. "I said, when I looked again.

I saw Mr. Wood's car raised up and carried across the road. I kept my eyes on Mr. Wood's car all the time." "What do you mean by saying, when you looked again, looked again at what?" Ans. "Wasn't looking again at nothing; I was looking at the car, that was the only thing I know I was looking at." "At the Nichols car?" Ans. "Yes, sir." "You never stopped looking at it?" Ans. "No, sir; I just kept my eye on the car." "What did you mean by saying, when you looked again?" Ans. "That is just a saying I have."

Mrs. Eugene Wachter, a witness produced by the defendant, who was in the car with him at the time of the accident, testified that when Mr. Nichols came within about twenty-five feet of the Buckeystown road, he sounded the horn, "then, just as he made the turn up on the pike to the east side, I seen those cars, Mr. Wood's car, which was on the east side of the road, and Mr. De Garmendia on the west, and they were coming just like that, and I thought there was danger, and I screamed, and Mr. Nichols stopped his car and of course Mr. Wood ran into him. It just seemed as if he just hooked the wheel of Mr. Nichols' car with the right-hand side of his car, and took it right around with him to the south, and then when the wheel came off of Mr. Wood's car, that left Mr. Nichols' car loose, and that kind of bounced back some distance, enough to walk between them, and the lady fell out immediately." Witness got out of the car and went to the assistance of the plaintiff. Mr. Wood and Mr. Nichols and others were there. She heard Mr. Wood say to Mr. Nichols, "it was my fault, I didn't see you, the sun shone in my eyes and blinded me." Mr. Wood at the time of the accident was going very fast. She did not see the Wood automobile until just as Nichols made the turn on the pike. Mr. De Garmendia's car was, as she supposed, twenty-five feet back from the Wood car at the time of the accident. When asked how fast the Nichols car was going when upon the Adamstown road, she said: "I noticed the speedometer, it is my habit to watch it, and he was between eight and nine

miles; he came around there very slow and ran slow all the way. Mr. Nichols made the turn on the pike on the east side and the Wood car was coming on the same side. Mr. Nichols "had three-quarters or more made the turn; he was out on the pike" and his car had stopped, when at that instant, he was struck by the Wood car.

The defendant testified that, on the occasion of the accident, when he approached the Buckeystown road and was within eighteen or twenty yards of that road, he "blew for it and looked and saw the roadway was clear all the way around the turn on my right." And as he approached the Buckeystown road, he was running about ten or twelve miles an hour, and when he ran out on that road, he was running between eight and nine miles an hour, and had "made about three-quarters of the turn" when he was struck by the Wood car on the right-hand side in front, and was turned around in the road southeast, taking him in the opposite direction between nine and ten feet. He was on the east side of the road when the collision occurred. He further stated that when he came out of the Adamstown road, he was running along the right side of the road and made the turn into the road "without seeing if anyone was coming from Buckeystown down." When he had about made three-quarters of the turn upon the road, Mrs. Wachter screamed, and as he says "I threw on the emergency brake and threw the clutch out and put the foot brake on and stopped my car." He had not seen either of the cars before Mrs. Wachter screamed. Immediately thereafter "Wood's car crashed into us." After the accident, he went to the assistance of the plaintiff and aided those present in putting her in the car of Mr. De Garmendia, in which she was carried to the doctor. At the time of the accident, the defendant said that he was on the east side of the Buckeystown road, while the car in which the plaintiff was riding was on the extreme east side of the road.

Upon cross-examination, the defendant was asked: "Where was the DeGarmendia car when you first saw it on this after-

noon?" Ans. "About twenty-six feet from the end of the road, where it comes out from Adamstown; there is where he stopped." "Where was the Wood car?" Ans. "The Wood car was hooked into mine." "Had you seen Mr. De Garmendia's car before this?" Ans. "No, sir." "You could have seen it if you had been looking?" Ans. "I was looking." "What was to prevent you from seeing before that?" Ans. "Because when Mrs. Wachter screamed, I was looking to see what I was doing to keep from having a collision." "Do you mean to tell this jury, you were looking as you came on that Adamstown road for a distance of within three hundred feet before you reached the intersection?" Ans. "Looking right at it." "For how long a distance were you watching this national highway?" Ans. "Loking at it all the time." "But you didn't see the De Garmendia car until twenty-six feet north of the intersection. Is that right?" Ans. "Never saw him, no, sir." "And you didn't see the Wood car until the impact occurred?" Ans. "Never saw the Wood car until the impact." "What was to prevent you from seeing these cars before that, if you were looking in that direction?" Ans. "I was looking right at it, my turn, to see if my turn was clear. It is a long turn, and in my range of vision I didn't see any car coming." "There was nothing to obstruct your vision?" Ans. "When I was making the turn, my vision was looking where I was going." "Before you made the turn, was there anything along that road to obstruct anybody's vision?" Ans. "They wasn't close to the road when I went to make my turn." "You said you were watching, watching in which direction?" Ans. "Could I look in three ways at once?" "Were you looking to the north?" Ans. "How far do you want me to look?" "Were you at any time, while on that road, before you reached the intersection, looking to the north?" Ans. "I did." "For what distance?" Ans. "I was looking down the road, I suppose a hundred yards." "You testified here in this Court, didn't you, upon Mr. Wood's appeal?" Ans. "Yes, sir."

"Didn't you tell the jury in that case, in answer to my question whether you were looking, and you said you weren't looking?" Ans. "I didn't say I wasn't looking." "Didn't you tell the jury you didn't look because you didn't have to look, you had the right of way, and you were relying upon your rights as a citizen of Maryland?" Ans. "No, sir."

Witnesses were placed upon the stand by the plaintiff, who corroborated the testimony of De Garmendia and Washington in respect to the alleged statements made by both Wood and Nichols as to which of them was responsible for the collision, while others were produced by the defendant, who corroborated him in the denial of such statements. We have very fully stated the evidence in this case, because of the character of the prayers, which are in the nature of demurrers to the evidence.

The plaintiff in this case was an invited guest of the owner and driver of the automobile in which she was riding. And, although it may be found from the record that the driver of the car was negligent in its operation, we cannot impute his negligence to her, and thereby defeat her right to recover, if she be without fault. *Phila., Wilmington & Balto. R. R. Co. v. Hogeland,* 66 Md. 149; *Baltimore & Ohio R. R. Company v. State, use of Strunz,* 79 Md. 335; *United Railways Co. v. Biedler,* 98 Md. 564; *United Railways Co. v. Crain,* 123 Md. 332; *Baltimore & Ohio R. R. Co. v. State, use of McCabe,* 133 Md. 219; *Washington, Balto. & Annapolis Elec. R. R. Company v. State, use of Hall,* 136 Md. 103.

In this case, as in the cases we have cited, the question is not whether Wood's negligence could be imputed to the plaintiff, but whether she omitted that due care which under the circumstances she was bound to take, and whether there is evidence to be found in the record sufficient to go to the jury, tending to show want of care on her part. *United Railways Co. v. Crain, supra.* The court below instructed the jury that the plaintiff, by her own negligence, contributed to the accident which caused the injuries complained of, and di-

rected a verdict for the defendant. The question of the plaintiff's contributory negligence was not submitted to the jury, the court holding by its prayer that she, upon the facts found in the record, was guilty of contributory negligence as a matter of law. As we have said, it was not the driver's negligence upon which this case was to be decided, but upon the independent negligence, if any, of the plaintiff.

This Court, in the recent case of the *Washington, Baltimore and Annapolis Elec. R. R. Company* v. *State, use of Hall, supra,* after affirming the action of the lower court in its refusal to grant a similar prayer upon the facts of that case, and after holding that upon such facts the question of the contributory negligence of the plaintiff should have been submitted to the jury, speaking through JUDGE BOYD, said: "In the *Crain* case the plaintiff testified that just before the accident she heard Mr. Goodwin, the driver, tell Mr. Prutz, another passenger, that there was a crossing somewhere along there but just where it was located he did not know. The plaintiff was enjoying the scenery. There were poles fifteen or eighteen inches in diameter upon each side of the railroad tracks, at a distance not greater than 110 feet apart, with wires strung upon them, extending for at least half a mile to the westward, which located the railroad and the crossing upon the highway, and they were plainly visible at a point some distance from the crossing, thus pointing out the place of danger of which Goodman had given notice to those in the automobile, including the plaintiff. As the court said: 'It would seem that said poles and wires would have been noticed and observed by the plaintiff in the exercise of ordinary care and caution on her part to avoid the threatened danger, but if they were observed by her she made no mention of them.' Yet the court said that it could not hold as a matter of law she was guilty of contributory negligence, 'but nevertheless we think the evidence tending to show a want of due care on her part—which under the circumstances she was bound to take—should have been submitted to the jury.'"

JUDGE BOYD, further discussing that case, said, quoting from a note in *Ann. Cases* 1916 E 269: "Whether the occupant has exercised reasonable care under the circumstances is usually a question for the jury."

And he then proceeded to say that not only was the question of contributory negligence of the plaintiff submitted in the *McCabe case,* but also in the earlier cases of *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Hogeland,* and *Baltimore and Ohio Railroad Company* v. *State, use of Strunz, supra.*

The alleged negligence of the plaintiff to which our attention has been directed is that she failed to observe the automobile of the defendant immediately before the accident, on the Adamstown road moving eastward towards its intersection with the Buckeystown road, and to notify the driver of its approach.

We are of the opinion that upon the facts disclosed by the record in this case, the jury should not have been instructed that the plaintiff was guilty of contributory negligence as a matter of law, but upon such facts the question of her contributory negligence should have been submitted to the jury.

The defendant's third prayer, which instructed the jury that there was no legally sufficient evidence to entitle the plaintiff to recover, was also erroneously granted.

By Section 163, Article 56 of the Code of Public General Laws it is provided:

> "At the intersection of public highways all vehicles shall keep to the right of the centre of such highways, and close to the right-hand side of the road when turning to the right, *and pass to the right of the centre of such intersection when turning to the left.* * * *
>
> "All vehicles about to turn from the road upon which they are traveling into any intersecting road shall gradually reduce their speed to a point not exceeding twelve miles an hour for a distance of not less than twenty-five feet before beginning to make such turn, and where the view of the intersecting road is obstruct-

ed, preserve such reduced rates of speed until the·turn
has been completed.

"All vehicles shall have the right of way over other
vehicles approaching at intersecting roads from the
left, and shall give right of way to those approaching
from the right."

By these provisions of the law, the defendant in this case
had the right of way over the vehicle in which the plaintiff
was approaching the intersection from his left, and had there
been a vehicle at the time approaching the intersection from
the south, it would have had the right of way over the vehi-
cle in which the defendant was riding. For such reason it
became especially important that the defendant should have
seen that the way from that direction was clear, or that there
was no vehicle approaching having the right of way over him.
It may be said, because of this statute and the rights con-
ferred thereby, that the first and chief thought and care of
the driver of a vehicle approaching an intersecting road
should be given to those vehicles that might be approaching
him from the right and, for the safety of those using the
public roads, too much stress cannot be laid upon the im-
portance of so doing. At the same time, the traveller is not,
because of the statute looking to the general safety and wel-
fare of others as well as himself, altogether relieved of the
necessity of observing the condition of the road to his left,
with a view of ascertaining whether or not the road is clear
and free of persons and vehicles approaching from that di-
rection. Especially is this true when a vehicle having the
right of way, which is not to cross the intersecting road, but
is to turn to its left, meets those that might be approaching
the intersection from that direction, as in the case before us;
and we may further add that in making such turn into the
intersecting road he should as far as possible comply with
the rules and regulations in respect thereto as contained in
the above quoted section of the law.

Without pointing out the particular acts of the defendant, as testified to by some of the witnesses in the case, which we must assume to be true in deciding the legal sufficiency of the evidence, there was evidence tending to show negligence on the part of the defendant legally sufficient to go to the jury.

The plaintiff's first prayer is one very frequently used in cases of this character and is ordinarily regarded as a good prayer, although at times it has been criticised as being too general in its terms. *United Electric Railway Co.* v. *Crain, supra.*

The plaintiff's second prayer is subject to the criticism made by JUDGE BOYD of the plaintiff's second prayer in the *Hall case.*

By the plaintiff's third prayer the court was asked to direct the jury to find a verdict for the plaintiff if they found the defendant had not complied with certain traffic rules or regulations provided by the statute.

This, we think, was not a proper prayer to be granted in the case, as the jury was not permitted to consider the facts and circumstances under which he failed to comply with the statute, if he so failed, but they were told, without regard to any of the facts of the case, that if they found that he had not complied with such rules and regulations, their verdict should be for the plaintiff.

The plaintiff's fourth prayer appears to be the usual damage prayer in cases of this character.

Because of the errors in the rulings of the court above mentioned, the judgment will be reversed.

*Judgment reversed and new trial awarded with costs to the appellant.*