Grafton,
March 4, 1930.

BESSIE E. ROBERTS, *Adm'x, v.* LISBON.

*Murchie, Murchie & Blandin* and *Clark B. Frost* (*Messrs. Alexander* and *Robert C. Murchie* orally), for the plaintiff.

*George W. Pike, Fred S. Wright, Jewett & Jewett* and *Robert W. Upton* (*Mr. Upton* orally), for the defendant.

BRANCH, J. I. In support of its motions for a nonsuit and a directed verdict, the defendant makes two contentions, (1) that the culvert was not shown to have been the cause of the accident, and (2) that it was in no way defective.

In regard to the first proposition, defendant argues that although Desrocher testified that the steering wheel was twisted from his hand when the automobile struck the capstone, he saw nothing and could not possibly know what it struck; that the automobile also struck a stump and "it is just as probable that the steering wheel was twisted from his hands by the stump as by the stone." It cannot be said as a matter of law that this argument is conclusive. Desrocher's testimony was clearly to the effect that the steering wheel was twisted from his hands before the car climbed the bank. He testified definitely that he struck the capstone and that this was what took the wheel out of his hands. It may well be that in making this statement the witness gave his conclusion as to the cause of the accident rather than the results of his actual observation at the time it occurred, but it appeared to have a reasonable foundation in subsequent inspection and furnished some evidence of the fact. Upon this point he testified as follows: "Q. Until you struck this rock, did you know what it was? A. I didn't know it when I did. Q. After the accident

did you look around there? A. Yes, I looked around there and saw it was the rock. Q. How did you know? A. Because that was the only thing there that could have turned the wheel out of my hands." There was also evidence of marks on the capstone tending to corroborate this version of the occurrence and, upon all the evidence, the question of the cause of accident was plainly for the jury.

In support of its contention that the culvert was not shown to have been defective, the defendant argues that, "The only defect claimed in this culvert seems to be that the top of the culvert was higher than the ditch. This could not be avoided." This does not fairly state the position of the plaintiff. While it was obviously necessary that the top of the culvert should be somewhat higher than the bottom of the ditch, there is no evidence that it was necessary to use as a capstone a rock 12 inches thick or that it should have been placed within the customary line of travel. Since the town saw fit to maintain a highway so narrow that travelers, in passing, were forced to make use of the ditch, it might well be found that due care required that the ditch be kept free from obstructions of this kind. Stated in another way, it may be said that the culvert was too short in view of the fact that the ditch served as a wheel-rut. Since the ditch was maintained as a part of the traveled way, it would be permissible to conclude that the culvert should have been extended to fit this situation. Inadequate length with reference to the width of a traveled road may constitute as serious a defect in a culvert as excessive height above the surface. See *Chapman* v. *Lee,* 80 N. H. 484, 491. If the town was not in a position to undertake the task of widening the road, this particular danger might have been obviated by excavating into the bank and setting the capstone further out beyond the line of invited travel. The problem of providing an entrance for water from the ditch would not seem to present very serious engineering difficulties. If the size and location of the capstone unnecessarily increased the danger of injury to travelers who might be forced to drive in the ditch, a finding of negligence would be justified. *Duteny* v. *Company, ante,* 65; *Caldon* v. *Company,* 75 N. H. 532, 533.

II. The first position taken by the defendant with reference to its contention that the court erred in withdrawing the question of the decedent's due care from the jury is as follows: "It could be found that Desrocher as an operator was careless and incompetent, and that Bailey was negligent in taking passage with him" without investigation as to his qualifications. Since the statute makes contributory negligence a matter of defence in such a case as this and places the

burden of proving it on the defendant, (P. L., *c.* 328, *s.* 13) it is obvious that some tangible evidence of contributory fault must be introduced before the question can be submitted to the jury. The burden of proof cannot be sustained by silence. In view of this requirement, defendant's argument fails for two reasons, first, there is no evidence that Bailey did not investigate Desrocher's qualifications as an operator, second, there is no evidence that inquiries, if made, would have disclosed any fact which would have led a prudent person to refuse passage in his car.

The following assertion appears in defendant's brief: "Desrocher testified: 'He (Bailey) asked me to take him to Lisbon. He was going to work in the morning on the dam.' ... It thus appears that Bailey made no inquiry in regard to Desrocher's qualifications or experience as a driver before he left with Desrocher." This is a *non sequitur*. There is nothing in the testimony to indicate that Desrocher undertook to report the whole of his conversation with Bailey, but if it be assumed that it was all included in the foregoing testimony, the only inference to be drawn from it would be that Bailey made no inquiry from Desrocher as to his, Desrocher's, qualifications. *Non constat* that he did not make inquiries from other people.

There was evidence that Desrocher was, at the time of the accident, a licensed driver and had been for six years. The only testimony relied upon by the defendant in support of its assertion "that Desrocher as an operator was careless and incompetent," is the evidence of his conduct at the time of the accident. Obviously no *ex post facto* conclusion as to his qualifications based upon this testimony could be used to charge the deceased with negligence in accepting him as a driver. The case is bare of evidence as to Desrocher's previous conduct or his reputation for care and skill as a driver.

The further contention of the defendant that "the evidence would also warrant a finding that Bailey did not exercise reasonable care for his own safety on the way down the hill," fails for similar reasons. The evidence is silent as to what Bailey did immediately before the accident. He occupied one of the rear seats in the automobile and if he had observed any carelessness in Desrocher's method of driving, he could hardly have done more than remonstrate. So far as the evidence is concerned, he may have done that. The fact of the matter is that the issue of the decedent's care was not seriously contested at the trial, and the silence of the evidence on this point would not justify a finding that he was negligent. Herein lies the distinction

between the case at bar and those from other jurisdictions cited by the defendant, *i.e. Maidman* v. *Rose,* 253 Mass. 594; *Wappler* v. *Schenck,* 178 Wis. 632; *Sharp* v. *Sproat,* 111 Kan. 735; *Chiswell* v. *Nichols,* 137 Md. 291; *Hardie* v. *Barrett,* 257 Pa. St. 42. In every one of these cases there was direct testimony as to the conduct of the injured party immediately prior to the accident, and the issue of contributory negligence was actually contested at the trial.

Since the evidence would not have supported a verdict for the defendant on the issue of contributory negligence, it was proper to withdraw that issue from the consideration of the jury. *Boston & Maine Railroad* v. *Sargent,* 72 N. H. 455, 466; *State* v. *Harrington,* 69 N. H. 496, 497.

III. During the course of the argument of plaintiff's counsel to the jury, the defendant was allowed an exception as appears in the following excerpt from the record. *Mr. Murchie,* arguing: "Mr. Jewett said in his argument that he could see no reason for the town maintaining the road in that spot narrower than it was above and below. But they were ordered, so Mr. Jesseman said, to widen the road and take out that big rock by the state engineer—it was dangerous. *Mr. Pike:* We except. *The Court:* To what statement do you except? *Mr. Pike:* That the town was ordered to take out that rock and widen the road because it was dangerous. *Mr. Murchie:* What he said was that he was ordered to widen the road by the engineer, and we say that it was a dangerous situation there, as appears from the evidence."

The following instruction was given to the jury: "You will not consider the fact that changes have been made in the highway and culvert at the place of the accident any evidence of admission on the part of the town that the prior condition was due to their negligence."

Subject to the defendant's exception the trial court made a finding that "the statement in argument was harmless."

The substance of the defendant's argument with reference to this exception appears in the following quotation from its brief. "To prove that the culvert was dangerous and unsafe at the time of the accident plaintiff's counsel was using the evidence of subsequent repairs. This evidence was incompetent for that purpose. *Aldrich* v. *Railroad,* 67 N. H. 250." This is not the ground of exception which was stated at the trial. When the court inquired "To what statement do you except?" counsel for the defendant replied, "That the town was ordered to take out that rock and widen the road be-

cause it was dangerous." If the language used by plaintiff's counsel was susceptible of this construction, it still had reference only to the reason which led to the giving of the order and did not assert an admission of negligence on the part of the town by making these repairs. Even as construed by defendant's counsel at the trial the argument could only mean that the state engineer ordered the town to widen the road and remove the rock because he considered it dangerous. The reasons which actuated the engineer in giving the order, however, may have been entirely at variance with those which prompted the town officials to carry it out. If the giving of the order indicated that in his judgment the road was dangerous, it would still be a matter of conjecture whether the compliance of the town with the order indicated anything more than submission to superior authority without concurrence in the correctness of this judgment. Consequently an assertion as to the reason for giving the order was not equivalent to an assertion that the town admitted its prior fault by complying with the order, which is the only kind of an argument that would offend the rule laid down in *Aldrich* v. *Railroad, supra.* The question argued here was not raised at the trial and, in accordance with the rule enunciated in *Tuttle* v. *Dodge,* 80 N. H. 304, will not now be considered.

*Judgment on the verdict.*

All concurred.