# TAXICAB COMPANY *v.* PHILIP OTTENRITTER.

*Collision of Motor Vehicles—Street Intersection—Evidence—*
*Instructions.*

In an action for injuries to the driver of a truck, caused by a collision with a taxicab at a street intersection, testimony of one witness that the taxicab was moving thirty miles an hour justified submission of the question of primary negligence to the jury, whose province it was to determine the credibility of the witness.                                                    p. 529

One about to drive across an intersecting street performs his duty if he looks sufficiently far to his right to discover that there is no traffic approaching from that direction within a distance that would be traversed by a vehicle driven at a lawful speed, it not being necessary for him to look as far as his eye can reach, nor to continue looking to the right while crossing.

p. 530

Even if, when at the middle of the crossing, plaintiff truck driver saw defendant's taxicab approaching from his right at a distance of fifty feet, he was not obliged to anticipate that it would approach and enter the intersection at an unlawful rate of speed.                                                   p. 530

An instruction that if plaintiff's truck was "part of the way across" the intersecting street when defendant's taxicab was still "over fifty feet from" the intersection, defendant did not have the right of way, and if defendant's driver then attempted to cross and so struck plaintiff's truck, the verdict should be for plaintiff unless he was guilty of contributory negligence, was too indefinite as to plaintiff's progress, and too specific as to the position of defendant's cab, to constitute the basis of a rule of general application.                            pp. 531-533

But as the only testimony, from which it could be inferred that plaintiff's truck was "part of the way across" when the cab was "over fifty feet away," showed that the truck had pro-

gressed so far over the crossing that the cab could not have collided with the truck without violating the speed law, and the instruction allowed recovery only if plaintiff was using ordinary care, the instruction sufficiently defined the conditions of recovery for the practical purposes of the trial upon the issue and evidence presented.                    pp. 533, 534

The question whether a vehicle approaching from the right is sufficiently near the street or road intersection to have the right of way over a vehicle approaching from the left necessarily depends in each case upon its own facts, such as the width of the intersecting highways and the speed of the vehicle.    p. 532

The general rule that, unless plaintiff's evidence discloses negligence on his part, the burden of proving contributory negligence is on defendant, was not changed by the mere fact that defendant's cab was approaching the street intersection, the scene of the accident, from the right.                    p. 534

A witness, having shown on a plat the course of defendant's cab and the point at which it struck plaintiff's truck, which was away from the "straight ahead" course of the cab, was properly allowed to state that the collision would have been avoided had the cab "kept straight ahead," this serving merely to illustrate his description of the movements of the cars, and being virtually the statement of a fact rather than the expression of an opinion.

p. 535 .

*Decided December 1st, 1926.*

Appeal from the Superior Court of Baltimore City (DUKE BOND, J.).

Action by Philip Ottenritter, on his own behalf and on behalf of and to the use of Albert Goetz, Incorporated, employer, and the Independence Indemnity Company, insurer, against the Taxicab Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*George Weems Williams* and *W. Conwell Smith,* for the appellant.

*Walter L. Clark* and *Allan H. Fisher,* with whom were *Fisher & Fisher* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The individual appellee, Philip Ottenritter, was seriously injured as the result of a collision between the motor truck he was driving and a taxicab of the appellant corporation at the intersection of Monroe and Presbury Streets in the City of Baltimore. An award of compensation to the injured man, to be paid by the corporation which employed him, or by its insurer, was made under the Workmen's Compensation Act. In this reimbursement suit by the employee, on behalf of himself, the employer, and the insurer, against the company owning the cab involved in the collision, there was an award of damages to the plaintiff by the verdict of a jury. The appeal is from the judgment entered on the verdict.

The principal questions are raised by exceptions to the trial court's ruling on the prayers. It was proposed by the defendant that the case be withdrawn from the jury on the theory that there was no legally sufficient evidence of negligence on the part of the driver of the defendant's taxicab, and that the uncontradicted evidence proved the driver of the motor truck to have been guilty of contributory negligence. The court refused to grant such instructions, and also rejected another of the defendant's prayers to which the exception refers. A granted prayer of the plaintiff is also a subject of the exception.

The descriptions of the accident by the drivers of the colliding cars are widely divergent. It was testified by the plaintiff that, about one o'clock on the afternoon of July 31st, 1924, he was driving the truck southwardly on the west side of Monroe street near the curb, at a speed of not over fifteen miles an hour, that when he reached a point several feet north of the curb line of Presbury Street, which intersects

Monroe Street at right angles, he looked to his right for a distance of half a block or more on Monroe Street and saw no vehicle approaching, that he proceeded at the same rate of speed across the street intersection and, after he had passed the center line of Presbury Street, he felt an impact which seemed to be from the rear, as it knocked him over the steering wheel and against the wind-shield, that he regained his position back of the wheel, and remembers that the truck turned over, but does not recall seeing anything strike it at the time of the collision. On the other hand, the taxicab driver, who was proceeding eastwardly on Presbury Street, described the accident as follows: "As I approached Monroe Street I slackened my speed to about eight miles and looked to the right, and my right was clear, and I looked to the left and saw the truck coming at full speed on Monroe Street. I applied my brakes harder and stopped sudden within about six feet, and just as I stopped the truck was passing me. He turned a little eastward to clear the front of my machine, and his rear wheel struck the left fender and the chassis on the front of the cab, bending them both and jumped over the chassis, the rear wheel did, and continued on down the street to the end of the white line with the rear wheel about fourteen or fifteen inches off the ground, and he turned over right at the end of the white line."

One of the plaintiff's witnesses, who was standing at the southeast corner of Monroe and Presbury Streets at the time of the accident, testified that the truck, coming south on Monroe Street, crossed the intersection of the streets at the rate of twelve or fourteen miles an hour, and the taxicab came east on Presbury Street at a speed of thirty miles an hour, and, entering the street intersection at that speed, hit the truck on the right rear wheel. When the collision occurred, he said, the rear of the truck was on a line with the southern curb of Presbury Street, the cab having veered to the south before the impact. When the witness first saw the two cars, the truck had nearly reached the middle of Presbury Street and the cab was about seventy-five feet

west of the center line of Monroe Street. There was no other traffic then approaching on either street, so far as the witness observed.

An officer who was following the truck in a car of the police department, at a distance of half a block, testified as a witness for the defendant, that the truck was running at a speed of not less than twenty-five miles an hour when the accident happened, and that the taxicab was moving slowly. He said: "It looked as though both tried to avoid it, * * * it seemed as though one slammed on the brakes and the other one tried to swing around it. * * * The taxicab tried to make an abrupt stop, and I felt that it was only a close shave. * * * The front of the machine passed all right. * * * I thought the truck was by. His rear looked to me as though his rear wheel run over the springs that project out. You see they have not got any bumpers. * * * The wheels, you could see it raise. Whether it struck the fender or the bumper, or what part, I would not say."

There is other testimony in the record, supporting or opposing the respective theories as to how the accident occurred, but enough has been cited to show the nature of the issue of fact submitted to the jury.

As there was testimony that the taxicab was being driven at the rate of thirty miles an hour at the time of its collision with the truck, at the street intersection, the case could not properly have been withdrawn from the jury on the ground that the evidence of primary negligence was legally insufficient. It was argued that the testimony of the witness who said the cab was running at such high speed gave inherent indications of unreliability. But it was the province of the jury who heard and saw the witness to determine how far his statement was worthy of belief. The Court would not be justified in disposing of the case on the assumption that this particular testimony was incredible.

It is contended that the plaintiff is conclusively proved to have been guilty of contributory negligence because it appears from his own admission that after passing the north

building line of Presbury Street he could have seen the taxi-
cab approaching from the west, as the view was clear in that
direction for a distance of several blocks.   It was not neces-
sary for the plaintiff to look as far as his eye could reach
to his right before proceeding across the intersecting street.
His duty in that respect was performed if he looked suffi-
ciently far to his right to discover that there was no traffic
approaching from that direction within a distance that would
be traversed by a vehicle driven at a speed permitted
by the law.   He was not required to look always to his right
while crossing the street, as he had to avoid endangering
travel ahead of him, or approaching from his left.   *Chiswell
v. Nichols,* 137 Md. 291.   If the taxicab was running at
thirty miles an hour, it could have been beyond the reasonable
range of the plaintiff's vision when he looked, before enter-
ing the intersection, and yet it could have reached the place of
the collision at the instant of the plaintiff's arrival at that
point.   According to the testimony of one of his witnesses,
the taxicab was still fifty feet or more from the crossing when
the plaintiff had proceeded about as far as the middle of the
intersection area.   The truck was then only about fifteen or
twenty feet from the point where it and the cab collided.
Even if the plaintiff, when at the middle of the crossing, had
seen the cab approaching from his right at the distance just
mentioned, he was not obliged to anticipate that it would
approach and enter the intersection at an unlawful rate of
speed.

The Motor Vehicle Law provides: "No motor vehicle shall
be operated upon any public highway of this state at a rate
of speed exceeding fifteen miles an hour in the thickly set-
tled or business parts of cities, towns or villages, or twenty
miles per hour in the outlying or not thickly settled parts of
cities, towns or villages." Code, art. 56, sec. 194 (3).   It is
further provided: "Upon approaching * * * a crossing of
intersecting public highways, * * * and in traversing such
crossing, * * * the person operating a motor vehicle * * *
shall have the same under control and shall reduce its speed
to a reasonable and proper rate." *Ibid.* sec. 195.

While it was incumbent upon the plaintiff to respect the rule giving the right of way, at street intersections, to vehicles approaching from the right (Code, art. 56, sec. 209), yet if the way for a safe distance was clear of traffic coming from that direction, he should not judicially be declared negligent in not providing against the possibility of collision with a car which could not come into dangerous proximity to his own unless it were unlawfully operated.

The plaintiff's third prayer, as granted after being modified by the court, instructed the jury as follows: "That if they shall believe from all of the evidence in this case that the plaintiff was proceeding south on Monroe Street at its intersection with Presbury Street; and shall further believe that the plaintiff had gotten into the intersection of the two streets, and was a part of the way across the said intersection when the taxicab of the defendant was still at a distance of over fifty feet from said intersection, then, if they shall so believe, the driver of the taxicab of the defendant did not have the right of way over the plaintiff; that if they shall so find and shall further believe that the defendant's driver then attempted to cross Monroe Street, and, in so doing, struck the rear right wheel of the plaintiff's truck and caused the accident complained of in this case, then their verdict shall be for the plaintiff, unless they shall believe that the plaintiff contributed to his own injury by a failure to use reasonable and ordinary care."

The statutory right of way rule is in the following form: "All vehicles shall have the right of way over other vehicles approaching at intersecting roads from the left, and shall give right of way to those approaching from the right." Code, art. 56, sec. 209. It was the obvious purpose of this rule to direct the order of precedence as between vehicles moving on intersecting roads or streets in such manner that their lines of progress will cross and that a collision may result if neither yields the right of way. *Buckey v. White,* 137 Md. 124. The statute does not specify how near a vehicle approaching from the right must be to the point of intersection in order to be entitled to the right of way with respect

to a vehicle approaching from the left, nor what must be the proximity of the latter to the point of possible collision in order that the approach of one coming at a greater distance from the right may be disregarded. It would be difficult to prescribe such limitations upon the rule in view of the diversity of the conditions to which it must be applied. Certainly, the court would not be justified in regulating the enforcement of the rule according to specific measure of distance which the Legislature has not found it expedient to adopt. The question whether a vehicle approaching from the right is sufficiently near the street or road intersection to have the right of way over a vehicle approaching from the left necessarily depends in each case upon its own facts. The width of the intersecting highways, the speed of the vehicles, and various other conditions might materially affect the issue as to whether an asserted right of way should be recognized or denied. In a case like the one before us, the jury could properly be instructed that if the car approaching from the left was actually crossing the street intersection at a time when the car approaching from the right was at such a distance from the intersection that its movement could not reasonably be supposed to create any danger that the two cars would collide, then the driver of the car proceeding from the left was not required to wait until the other car had passed, and if the operator of that car drove it at an unlawfully high and unexpected rate of speed over such intervening distance and against the car already on the crossing, thereby causing the accident complained of, the plaintiff was entitled to recover unless he contributed by his own negligence to the injuries for which he sued. The difficulty with the plaintiff's third prayer is that it makes the application of the right of way rule depend upon the inquiry whether the plaintiff's truck was "part of the way" across the intersection while the defendant's taxicab was still distant from it "over fifty feet." The description of the plaintiff's progress is too indefinite and the reference to the position of the defendant's cab is too specific for the purposes of a satisfactory instruction in such cases. After just entering the street intersection the plain-

tiff's truck was "part of the way across," and yet was then about thirty-five feet from the point near the further side where a collision might occur with the cab coming from the right, and if both cars had been traveling at the same speed, they would have been only twenty feet apart when the front of the truck reached the line of the cab's course projected. But if the truck had been running more slowly than the cab, even though both may have been moving within lawful speed limits, a collision might have been avoidable only through a concession of the right of way by the driver of one of the cars. Therefore, as the basis of a rule of general application, the specific limitation of the plaintiff's third prayer could not be given our approval.

But when the prayer is considered with reference to the particular issue and evidence in this case, it does not present the serious difficulty which its consideration in the abstract would suggest. The only witness from whose testimony the jury could find that the truck was "part of the way across" the street intersection, when the cab was over fifty feet from it, stated that the truck had proceeded about ten feet into the intersection and "was just about passing the middle of Presbury Street" when the cab was about seventy-five feet west of the center line of Monroe Street, or about fifty-five feet from the western line of the intersection area, or about sixty feet from the point where the lines of progress of the two cars would cross. The truck was then not more than twenty-five feet from that point, according to the only testimony which tended to support the primary theory of fact submitted by the prayer. If this was the actual situation immediately before the accident, it could not be found from any testimony in the case that the cab could come into collision with the truck without greatly exceeding the lawful limits of speed on the streets of the city. It could hardly be said that the driver of the cab had the right of way, if he could not exercise it except by violation of the speed laws of the state. A verdict for the plaintiff was made by the prayer to depend upon a finding by the jury that the driver of the cab drove it

against the rear right wheel of the truck, and caused the accident complained of, by attempting, from the distance indicated, to cross Monroe Street while the truck was proceeding over the intersection, as described in the testimony to which we have referred, and that the plaintiff was using "reasonable and ordinary care." If he was in fact using such care in directing the movement and controlling the speed of the truck immediately prior to the collision, and if the other questions of fact submitted by the prayer were decided in his favor by the jury, there could be no doubt as to his right to recover. This was the apparent theory of the prayer under discussion, and, for the practical purposes of the trial upon the issue and evidence presented, we think it sufficiently defined the conditions under which, if found to exist, the plaintiff would be entitled to a verdict.

The case of *Stewart Taxi-Service Co. v. Spencer,* 149 Md. 635, which the appellant cites in support of its ·objection to the plaintiff's third prayer, was materially different in its circumstances from the case presented on this appeal.

The defendant's twelfth prayer proposed an instruction that a presumption of negligence on the part of the plaintiff arose from the undisputed fact that the collision between the truck and cab occurred when the cab was coming from the plaintiff's right, since the law gives the right of way to vehicles approaching street crossings from that direction, and that the burden was, therefore, on the plaintiff to prove by a fair preponderance of evidence that he was not guilty of any negligence contributing to the accident. This prayer incorrectly assumes that, as between vehicles approaching a street intersection, the one coming from the right has an absolute right of way regardless of its distance from the intersection when the other vehicle entered it from the left, and regardless also of the relative rates of speed at which the two vehicles were moving. The mere fact that the defendant's cab approached the place of the accident from the right is not a sufficient reason for changing in this case the general rule that, unless the plaintiff's evidence discloses negligence on his

part, the burden of proving contributory negligence is on the defendant. *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161.

There are three exceptions relating to the admissibility of evidence. The first was taken because a witness was permitted to testify as to the speed of the defendant's cab as it approached the point of collision, the objection being that the witness did not show that he had sufficient knowledge as a basis for the statement which he made on that subject. In our opinion the objection was not sustainable.

The ground of the second exception was that the same witness, after testifying that the defendant's cab swerved to the south immediately before the aaccident, was allowed to state that if it had "kept straight ahead," the collision would have been avoided. This statement simply served to illustrate the description given by the witness, from his personal observation, of the movements of the two cars at the instant of the accident, and we think it was properly admitted.

The witness had shown on a plat the course of the cab and the point which the truck had reached when, as he said, it was struck on the right rear wheel. That point, as indicated by the witness, was sufficiently far beyond the line of what would have been the "straight ahead" course of the cab across the street, as to make it evident that the cars would not have collided if the cab had followed a direct line of transit and if the truck had reached at the time of the accident the point which the witness marked on the plat. The testimony excepted to was properly regarded by the court below as virtually the statement of a fact rather than as the expression of an opinion. It was quite different from the testimony, held inadmissible in the case of *Capital Traction Co. v. Contner,* 120 Md. 78, that the motorman on an electric car could have stopped it in time to avoid striking, at a street crossing, the vehicle in which the plaintiff was traveling. In *Sullivan v. Smith,* 123 Md. 546, 557, the statement of a witness that if the driver of an automobile "had gone straight ahead' instead of making the turn, he would not have hit the child at all," was held to express merely an opinion, but the conditions described in that case were very unlike those here considered,

and the opinion of the witness was said by the court to be "not based on the facts, if other parts of his testimony are to be accepted as true."

No proper foundation had been laid for the testimony offered for impeachment purposes and excluded by the ruling which is the subject of the third exception.

There is no ground of reversal in any of the rulings under review.

*Judgment affirmed, with costs.*

OFFUTT, J., dissents.