JERSEY ICE CREAM COMPANY *v.* FRANK A. BACH.
[No. 14, October Term, 1931.]

286

*Decided November 20th, 1931.*

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Foster H. Fanseen,* for the appellant.

*Washington Bowie, Jr.,* with whom was *Stephen W. Gambrill* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The only exception in this record, on the defendant's appeal, is concerned with rulings on the prayers at the trial of an action to recover for personal injuries and property damage resulting from a collision, in Baltimore, of the defendant's motor truck with the plaintiff's automobile. The personal injuries were slight, and the verdict for $600 was about equal to the estimated cost of repairing the damaged car. In describing the accident, the plaintiff testified that he was driving southward on Guilford Avenue, about 9 o'clock in the morning, and, when he arrived at the Twenty-fourth Street intersection, he looked to his right and saw an ice cream truck, later found to be the defendant's, coming eastwardly on the street at a distance of about ninety feet. He said: "As I looked up the street and saw this truck it occurred to me that I had ample time to cross the street, and I went on, attempted to go across the street, but before

I was a third of the way across the street, I realized that I had misjudged the speed of this thing, that it was coming at a terrific rate of speed, and I realized that I was going to be hit unless the driver slowed down a little or unless he turned his car to the left side. I watched him out of the side of my eyes—I was doing the driving—and just about the time that I passed him, lost sight of him, I was struck in the rear of the car and the next thing I knew the car was lying down in the street over at the southeast corner of Guilford Avenue and Twenty-fourth Street, and there were a couple of men reaching down in the car to give me their hands to help me out. They did assist me out, and I think the driver was there, and I think that he offered to take me to the hospital in a taxicab. There was another man there, Mr. Shipley, who offered to take me out in his car to the hospital, and I went along with him and got a surgeon and had my wounds dressed. I was not hurt very much." The speed of his car, the plaintiff said, was about eighteen miles an hour as he approached the point of collision.

Mr. Shipley, to whom the plaintiff referred in his testimony, witnessed the accident. He had alighted from his car at a filling station located at the southwest corner of Guilford Avenue and Twenty-fourth Street. The truck, when he first saw it, was about seventy-five feet away, passing an alley not quite as far as the middle of the block west of Guilford Avenue. It was afterwards stipulated that the distance from the alley to the avenue is 166 feet. As the truck reached the point where Mr. Shipley first noticed it, he said the plaintiff's car was back of the Twenty-fourth Street building line. Its speed was about twelve or fifteen miles an hour, while that of the truck was between twenty-five and thirty miles an hour, as estimated by this witness. The rear of the plaintiff's automobile, Mr. Shipley testified, was two or three feet south of the center line of Twenty-fourth Street "when the truck hit the car on the right rear fender." At that time, he said, the car "was on the right of the center of the street, on Guilford Avenue, and when the truck hit the car it knocked it clean across the street to the east side of the curb on Guilford

Avenue, turned it completely around so that it was facing north, and over on its right hand side with the wheels facing the west. * * * The truck did not stop. After it knocked the car to that side, it went clean across the street, until after it had gone, I will say, about thirty feet, and when it stopped it did not stop until it had climbed the curb with both the front and rear right wheels. * * *" Being asked, "Did the truck slow up at all as it approached Guilford Avenue?" the witness answered: "No, it did not. That was the one thing I especially noticed, the truck did not slow up. It looked to me like that truck made a sort of a little curve to turn to the right. * * * It looked to me like the driver of the truck might have thought he could get around in front of that car that he tried to avoid hitting him first."

William Renfore, an employee at the filling station already referred to, testified: "The truck was passing the alley when Mr. Bach's car got right at the corner of the building * * * and just about the time that Mr. Bach got to the end of the intersection, past the curb stone on Twenty-fourth and Guilford, this truck was halfway from the alley to the corner, * * * and when Mr. Bach's car entered about the center of the street the truck was up there close enough so that Mr. Bach, at the speed he was going, could not get out of the way with the end of his car to keep from hitting him. I was standing down there looking at both of them." The right rear wheel of the car, he said, was hit by the truck. The witness estimated the speed of the plaintiff's car at twelve or fifteen miles, and of the truck at twenty-five or thirty miles an hour, at the time of the impact. He said the speed of the truck was not checked as it approached the intersection, and further testified that "if the truck was going at maximum speed it was supposed to go, it never would have been an accident, * * * because the distance the truck was away, if he was going at the maximum speed, where he was before he got to Guilford Avenue, he wouldn't have overtaken him." It was explained by the witness that in referring to the maximum speed he meant the speed which the law allowed in the city.

The testimony of Walter I. Orem, another employee at the filling station, was to the effect that, as he came out of the station to wait on a customer, he saw the plaintiff's car coming south on Guilford Avenue, and heard the noise of the truck approaching on Twenty-fourth Street. When he first saw the truck, he said, it was about 75 or 100 feet away, and the front of the plaintiff's car was past the center of Twenty-fourth Street at that time. Without estimating the speed in miles per hour, he said the truck was going at least twice as fast as the car. His testimony agreed with that of the other witnesses for the plaintiff, as to the failure of the truck to reduce its speed, and as to the fact that it struck the rear part of the plaintiff's car, and as to the force of the collision.

The testimony offered by the defendant related to the extent of damage to the plaintiff's car, the cost of necessary repairs, the positions of the car and truck after the collision, and the presence, and inspection three days before the accident, of a "governor" in the operating mechanism of the truck, by which its speed would normally be limited to eighteen miles per hour. There is no contradiction of the evidence as to the distance of the truck from Guilford Avenue when the plaintiff arrived at its intersection with the street on which the truck was approaching. The width of Twenty-fourth Street, from curb to curb, as stated in the record, is thirty-nine feet and ten inches.

In relation to the evidence which we have summarized, there are three prayers to be considered, one of which was granted at the plaintiff's request, and two refused as offered by the defendant. The plaintiff's prayer under exception is in the following form: "The plaintiff prays the court to instruct the jury: That if they find from the evidence that the plaintiff in his automobile was proceeding south on Guilford Avenue at its intersection with Twenty-fourth Street, two of the public highways of Baltimore City; and shall further find that the plaintiff in his car was actually crossing the street intersection, at a time when the defendant's truck, approaching from the right, was at such a distance from the

intersection that its movement could not reasonably be supposed to create any danger that the automobile of the plaintiff and the truck of the defendant would collide, then the plaintiff in his car was not required to wait until the truck had passed; and if the jury further find that the driver of the truck of the defendant operated the truck at an unlawfully high and unexpected rate of speed over such intervening distance against the plaintiff's automobile, thereby causing the accident complained of, then the plaintiff is entitled to recover unless he contributed by his own negligence to the injuries for which he sues." This prayer applied the principle stated in *Taxicab Co. v. Ottenritter,* 151 Md. 525, 532, 135 A. 587, 590. In that case a motor truck, while passing over a street intersection, was struck by a taxicab coming at an excessive speed from the right. After quoting the statutory right of way rule, we said: "It was the obvious purpose of this rule to direct the order of precedence as between vehicles moving on intersecting roads or streets in such manner that their lines of progress will cross, and that a collision may result, if neither yields the right of way. *Buckey v. White,* 137 Md. 124, 111 A. 777. The statute does not specify how near a vehicle approaching from the right must be to the point of intersection in order to be entitled to the right of way with respect to a vehicle approaching from the left, nor what must be the proximity of the latter to the point of possible collision in order that the approach of one coming at a greater distance from the right may be disregarded. It would be difficult to prescribe such limitations upon the rule, in view of the diversity of the conditions to which it must be applied. Certainly, the court would not be justified in regulating the enforcement of the rule according to specific measure of distance, which the Legislature has not found it expedient to adopt. The question whether a vehicle approaching from the right is sufficiently near the street or road intersection to have the right of way over a vehicle approaching from the left necessarily depends in each case upon its own facts. The width of the intersecting highways, the speed of the vehicles, and various other conditions might materially

affect the issue as to whether an asserted right of way should be recognized or denied. In a case like the one before us, the jury could properly be instructed that, if the car approaching from the left was actually crossing the street intersection at a time when the car approaching from the right ·was at such a distance from the intersection that its movement ·could not reasonably be supposed to create any danger that the two cars would collide, then the driver of the car proceeding from the left was not required to wait until the other car had passed, and if the operator of that car drove it at an unlawfully high and unexpected rate of speed over such intervening distance and against the car already on the crossing, thereby causing the accident complained of, the plaintiff was entitled to recover, unless he contributed by his own negligence to the injuries for which he sued."

The present case clearly justifies the application of that principle. The effect of the proof is that the plaintiff would have passed over the crossing in perfect safety but for the violation by the truck driver of two highly important provisions of the Motor Vehicle Law, which are as follows: "No motor vehicle shall be operated upon any public highway of this state at a rate of speed exceeding fifteen miles an hour in the thickly settled or business parts of cities, towns or villages, or twenty miles per hour in the outlying or not thickly settled parts of cities, towns or villages." Code, art. 56, sec. 194 (3). "Upon approaching * * * a crossing of intersecting public highways, * * * and in traversing such crossing, * * * the person operating a motor vehicle * * * shall have the same under control and shall reduce its speed to a reasonable and proper rate." *Ibid.*, sec. 195.

The quoted instruction proposed by the plaintiff was properly granted because the jury could readily find from the evidence that, when the plaintiff started to cross the intersection, the truck was at such a distance that no danger from its approach was reasonably to be anticipated, and that, when the plaintiff's car was entirely past the center line of the intersection, the way would still have been safe if the speed

and control of the truck had been in compliance with the law.

The two rejected prayers of the defendant submitted the propositions that if the plaintiff could have seen the defendant's truck approaching from the right in time to have stopped his car and thereby avoided the collision, and failed to do so, thereby contributing to the happening of the accident, the verdict should be for the defendant, and that under the law of Maryland "automobiles approaching from the right shall have the right of way over those approaching from the left," and that if the jury should believe from the evidence that "the proximate cause of the accident was the failure of the plaintiff to yield the right of way to the defendant's truck," he was not entitled to recover. These prayers assumed the existence of a right of way for the truck in disregard of the evidence that it could not reasonably be asserted under the special circumstances of the accident. As we said in *Taxicab Co. v. Ottenritter, supra,* page 534 of 151 Md., 135 A. 587, 591, it is an incorrect assumption "that, as between vehicles approaching a street intersection, the one coming from the right has an absolute right of way, regardless of its distance from the intersection when the other vehicle entered it from the left, and regardless also of the relative rates of speed at which the two vehicles were moving." In *Hendler Creamery Co., Inc., v. Friedman,* 160 Md. 526, 154 A. 93, 94, we said, in the opinion by Judge Digges, that "a vehicle approaching an intersection from the right does not have an absolute right of way in every instance, because that question must be determined by the circumstances in any given case." There was no error in the rejection of the defendant's prayers to which the exception refers.

At the foot of the plaintiff's granted prayer which has been considered, the case of *Taxicab Co. v. Ottenritter,* 151 Md. 525-532, 135 A. 587, was noted. This was mentioned in the argument for the appellant as a ground of objection to the prayer, on the theory that it was thus given undue importance. The citation was presumably made to indicate the authority for the instruction requested, and would doubt-

less have been erased when the prayer was granted, if the defendant had made the objection now raised.

A motion has been made to dismiss the appeal on the ground that the record has not been condensed as required by section 12 of article 5 of the Code. The record includes testimony not material to the questions to be considered on appeal, but the usual penalty for the failure to comply with the rule is, in the event of a reversal, to charge the appellant, as the party responsible for the preparation of the record, with the costs thereby unnecessarily incurred. In this instance, the appellant will be chargeable with all the costs of the appeal in consequence of the affirmance.

*Judgment affirmed, with costs.*