YELLOW CAB COMPANY *v.* CLAIRE D. BRADIN
SAME *v.* MARTIN M. BRADIN
SAME *v.* KATHRYN D. GREEN
SAME *v.* EDWARD J. GREEN
[Nos. 3-6, April Term, 1937.]

*Decided April 22nd, 1937.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*H. Beale Rollins* and *F. Gray Goudy,* for the appellant.

*Paul Berman,* with whom were *Frank F. J. Daily* and *Theodore B. Berman* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

These suits for personal injuries suffered by occupants of a taxicab in a collision accident, and for medical expenses thereby occasioned, were tried by agreement concurrently before the same jury, and resulted in judgments for the plaintiffs, amounting to $2,850, from which the defendant has appealed. The accident occurred on the afternoon of November 23rd, 1935, at the intersection of Presstman Street and Druid Hill Avenue in the City of Baltimore. The injured plaintiffs were passengers in a cab of Gray Taxicab, Inc., which, according to their testimony, was proceeding slowly over the intersection area in an easterly direction, and was more than halfway across, when it was struck by a taxicab of the Yellow Cab Company, which was being driven northwardly at high speed. Markel Service, Inc., an insurance adjustment agency, represented both of the taxicab companies whose cabs were involved in the collision. On the following day one of its adjusters induced the plaintiffs to release Gray Taxicab, Inc., from liability on account of the accident upon the payment of sums aggregating $200. The releases thus procured for that company were pleaded as a defense to these suits brought soon afterwards against the Yellow Cab Company. To the pleas making that defense the plaintiffs replied that the releases were obtained by fraud. Issue was joined also upon the allegation and denial of negligence in the operation of the defendant's cab. It is not disputed that the evidence was legally sufficient for the submission of that question to the jury.

There are twenty exceptions in the record. The final exception, relating to the prayers, will be first considered.

Granted prayers of the plaintiffs authorized the jury

to conclude that the Yellow cab did not have the right of way at the time of the accident if the Gray cab was actually crossing the street intersection when the Yellow cab was at such a distance that its movement could not reasonably be supposed to create any danger that the two cabs would collide. Those prayers were criticized for not including the further hypothesis that the Yellow cab was operated over the intervening distance at a "high and unexpected rate of speed." The quoted words were suggested by the opinion in *Taxicab Co. v. Ottenritter,* 151 Md. 525, 532, 135 A. 587, as appropriate for the purposes of an instruction in that case, and were used in a granted prayer which was approved on appeal in *Jersey Ice Cream Co. v. Bach,* 161 Md. 285, 157 A. 277. An instruction comparable to the one now under consideration was held to be too general, in view of the evidence, in *Paolini v. Western Mill & Lumber Corp.,* 165 Md. 45, 166 A. 609. But, as recognized in the cases just cited, and also in *Hendler Creamery Co. v. Friedman,* 160 Md. 526, 154 A. 93, and *Warner v. Markoe,* 171 Md. 351, 189 A. 260, the propriety of instructions affecting the right of way at street intersections must depend in each case upon its special circumstances. In this case the driver of the Gray cab testified, as a witness for the defendant, that when he arrived at the intersection, going east on Presstman Street, the Yellow cab was "at the end of the next block" to the south on Druid Hill Avenue; that he did not realize how fast the Yellow cab was coming and thought he "had plenty of time to get across"; that the Gray cab had passed beyond the middle of the intersection, moving at a speed of five miles an hour, when the Yellow cab was about thirty-five feet distant; that the Gray cab was struck on its right side at the rear wheel; and that it overturned on its left side about two feet from the north curb of Presstman Street. The witness stated that the Yellow cab was moving "mighty fast" when he observed it a block away, and its high speed is therefore said to have been not "unexpected" within the purview of the opinions in the *Otten-*

*ritter* and *Bach* cases. But in view of the Yellow cab's remoteness when the Gray cab entered the intersection, as testified by the witness, and of his statement that there was apparently ample time for him to cross in safety, he could not fairly be charged with the duty of accurately gauging the speed of the Yellow cab or of anticipating that it would be driven unlawfully fast over the intervening distance and into the part of the intersection space over which the Gray cab was then passing. In the *Ottenritter, Bach,* and *Paolini* cases, the cars approaching from the right were much closer to the street intersection than the Yellow cab is said to have been in this instance, when the other cars involved in those accidents started to cross. The instructions here in question might well have included the additional words to which the appellants have referred, but their omission, under the circumstances of these cases, is not a sufficient ground of reversal.

It was argued also that the prayers of the plaintiffs in regard to the right of way were defective because they did not refer to the Gray cab driver's duty to exercise the highest degree of care for the safety of his passengers. There was no occasion for the prayers on that subject to define such a duty, especially since the suit was not against Gray Taxicab, Inc., but against the Yellow Cab Company, whose driver was alleged to have caused the accident by failure to exercise a proper degree of care for the safety of the Gray cab and its occupants.

It was testified by the driver of the Yellow cab that, when he came to the intersection he "slowed down"; that the Gray cab had not yet passed the west building line of Druid Hill Avenue; that it was "coming pretty fast" and proceeded over the intersection without any reduction of its speed; that the witness applied his brakes when he saw the Gray cab was not giving him the right of way; and that, as the Yellow cab was "just about stopped," its left front fender was caught by the right rear fender of the Gray cab, which was then swerving toward the north side of the street. By prayers granted

at the defendant's request the jury were instructed in effect that if the two cabs arrived at the intersection about the same time, then, under article 56, section 209, of the Code (Supp. 1935), the Yellow cab had the right of way over the Gray cab, and that if the accident was caused solely by the failure of the Gray cab to yield such right of way, the verdict should be for the defendant. Those prayers were granted expressly in connection with the prayers of the plaintiffs relating to the right of way, and we think that as thus considered the instructions fairly submitted that issue to the jury.

Other prayers of the defendant corporation proposed to give it the benefit of an absolute right of way in disregard of testimony as to conditions by which the right would properly be qualified. There was no error in the ruling against such instructions.

The principal argument in the case was concerned with the rulings on prayers in reference to the effect upon this suit of the releases executed by the plaintiffs in favor of Gray Taxicab, Inc. At the request of the plaintiffs, and over the defendant's objection, the jury were instructed that if the collision between the Gray and Yellow cabs was due to negligence on the part of both drivers, the releases offered in evidence were a complete bar to the suits against the Yellow Cab Company, unless they were found by the jury to have been executed as a result of misrepresentation, deception, or fraud practiced upon the plaintiffs by the agent of Gray Taxicab, Inc., in which event they had no such effect. Prayers submitted by the defendant, and refused by the trial court, were based upon the theory that the releases effectually barred recovery against the Yellow Cab Company if negligence in the operation of the Gray cab contributed to the accident in any degree. The court also refused certain prayers of the defendant which would, if granted, have instructed the jury, as a matter of law, or in the alternative have permitted them to find, that the plaintiffs had waived the alleged fraud in the procurement of the releases. The waiver theory was based upon the fact that there had

been no disaffirmance of the releases nor a return of the consideration.

The testimony of the plaintiffs in reference to the releases was to the following effect: The representative of Markel Service, Inc., first obtained a statement, signed by one of the plaintiffs, as to how the accident happened. That statement fully exonerated the driver of the Gray cab and attributed the collision solely to the Yellow cab driver's negligence. Nevertheless the agent of Markel Service, Inc., offered $200 to the plaintiffs for releases in favor of Gray Taxicab, Inc., assuring them that the responsibility of the Yellow Cab Company would not be thereby affected. The agent stated to the plaintiffs that the Markel Service represented the Gray Taxicab, Inc., but they were not informed that the interests of the Yellow Cab Company in regard to the accident were likewise committed to that organization.

There was a denial by the agent of his quoted assurance to the plaintiffs that any claim they might have against the Yellow Cab Company would not be affected by the releases, and he contradicted their testimony that one of them signed a statement in which the circumstances of the accident were described. He said that his authority as agent applied only to the settlement of the cases so far as the Gray cab company was concerned, and did not extend to the adjustment of any Yellow Cab Company liability.

If no negligence in the operation of the Gray cab contributed to the accident, the question as to the effect of the releases upon the suits against the Yellow Cab Company is unimportant. *Western Maryland Dairy Corp. v. Brown,* 169 Md. 257, 265, 181 A. 468; *Elling v. Travers,* 162 Md. 597, 160 A. 789; *Lanasa v. Beggs,* 159 Md. 311, 151 A. 21. But even upon the assumption that there was concurrent negligence in the operation of both cabs and that the release of one of the taxicab companies would ordinarily discharge the other also, because there could be only one satisfaction for the same injuries, that principle is not applicable in these cases if the releases

pleaded by the defendant were procured under such circumstances as the plaintiffs described in their testimony. *Blinder v. Monaghan,* 171 Md. 188 A. 31; *Western Maryland Dairy Corp. v. Brown, supra; Elling v. Travers, supra;* and *McGrath v. Peterson,* 127 Md. 412, 96 A. 551. The jury had a right to credit that evidence, and it tended to support a conclusion that the releases were improperly obtained.

In the belief that they had no claim against the Gray Taxicab, Inc., as they testified, the plaintiffs executed what they regarded as superfluous releases in its favor, with the understanding that their right to sue the Yellow Cab Company would continue to be enforceable. That understanding, the plaintiffs assert, was induced by an agent of an adjustment organization by which, as since revealed, both companies were then represented. There was no evidence of any attempt to effect a settlement with the plaintiffs for the Yellow Cab Company's benefit. But on its behalf in this suit the effort is made to utilize the releases secured for Gray Taxicab, Inc. While the agent of the Markel Service testified that he solicited the releases because he understood the Gray Cab Company to be liable for the injuries suffered in the accident, it could be inferred from the evidence that he may not have considered it exclusively responsible, and the plaintiffs stated that their intention to sue the Yellow Cab Company was impressed upon the agent before the releases were signed. Under such circumstances a representation by the agent that the releases would have no effect upon the liability of the Yellow Cab Company could only be regarded as misleading. In that view, the releases could not be used as a ground of defense in these suits unless there is merit in the contention that the alleged misrepresentation was waived by the failure of the plaintiffs to disaffirm the releases and return the consideration paid for their execution. There was no reason for a disaffirmance of the releases, since the plaintiffs apparently, from their testimony, never had any purpose to include the Gray Cab Company as a defendant in this action or to sue it inde-

pendently. The amount paid for its formal exoneration was charged to its separate account by Markel Service, Inc., and we are unable to hold that the Yellow Cab Company's prayers could rightfully condition a recovery by the plaintiffs upon the repayment of a fund, in which it had no interest, to another corporation which is not being sued.

In none of the rulings on the prayers have we found any error.

The first evidence exception refers to the refusal of the lower court to declare a mistrial because of a remark by counsel for the plaintiffs. Any prejudicial effect of the remark was corrected by the court's reproof and the counsel's disclaimer.

When the agent who solicited the releases was being cross-examined, he was asked by whom he was employed. He replied: "Markel Service." He was then asked: "What is Markel Service?" An objection to the question having been overruled, the witness answered: "It is an insurance adjustment agency." The defendant then moved that a mistrial be declared because of the reference made to the fact that it had liability insurance, but the motion was denied. The rule applied in *York Ice Machinery Corp. v. Sachs,* 167 Md. 113, 173 A. 240, and *International Co. v. Clark,* 147 Md. 34, 127 A. 647, is invoked in opposition to those rulings, which are the subject of the second and third exceptions. In the present cases a reference to the nature of the Markel organization was practically unavoidable, and the resulting indication that the defendant had insurance protection would not have justified a termination of the trial on that ground, in view of the jury's presumptive knowledge of the legal requirement of public liability insurance for taxicab companies as common carriers. Code (Supp. 1935) art. 56, sec. 187R; art. 23, sec. 361.

The fourth to fifteenth exceptions, inclusive, and the seventeenth, eighteenth, and nineteenth, were reserved because of the admission of testimony that the Yellow Cab Company, as well as Gray Taxicab, Inc., was repre-

sented by the Markel Service. There was no error in those rulings.

The sixteenth exception refers to another motion that a mistrial be declared, but the court struck out the comments of which the defendant complained, and its ruling on the motion does not appear from the record to have involved an abuse of judicial discretion.

A review of all the exceptions discloses no sufficient reason for a reversal of the judgments and a remand of the cases for retrial.

*Judgments affirmed, with costs.*