LEGUM ET AL. *v.* HOUGH

[No. 49, October Term, 1948.]

2

*Decided January 12, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Paul F. Due,* with whom were *Due, Nickerson & White-ford* on the brief, for the appellants.

*Hector J. Ciotti* and *F. Clifford Hane,* with whom were *Ciotti & Slingluff* and *R. Lee Slingluff* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment of $510.85 in favor of the appellee in an action for property damage to his automobile sustained in a collision at the intersection of Forest Park Avenue and Dennison Street, in Baltimore City. The accident occurred on February 20, 1946 at about 4:30 p. m. The weather was clear, it was daylight and the streets were dry. Forest Park Avenue is about 30 feet wide from curb to curb; Dennison Street is about 26 feet wide. The neighborhood is of a suburban character. The appellee was proceeding east on Forest Park Avenue, the driver of the appellants' car north on Dennison Street. There were no traffic lights or stop signs at the intersection, but there were "slow" signs at all four corners. At the conclusion of the testimony the trial judge reserved decision upon two prayers of the appellants, which sought a directed verdict on the ground of contributory negligence on the part of the appellee. Following the verdict, a motion for judgment N.O.V. was overruled. The parties agree that the sole question presented is whether the appellee was guilty of contributory negilgence as a matter of law.

The appellee testified that he was driving at about 20 miles per hour, and slowed down to about 10 miles per

hour as he approached Dennison Street. His car was a Plymouth, from 15 to 18 feet long. When the front of his car was about 8 feet west of the west curb of Dennison Street, he looked to his right and saw the other car 120 or 125 feet away. He could not say how fast it was going, but thought he could safely cross before it reached the intersection. He proceeded across without looking to his right again. He was watching a woman and child on the sidewalk 25 feet beyond the intersection. When he was two-thirds of the way across he heard brakes "squealing", looked to the right again, and "just about that time" the other car struck his "back of the right front wheel". His car was pushed north a distance of about 35 feet; the other car came to rest 73 feet north from the point of collision. There were skid marks made by the appellants' car 40 feet up to the point of collision. Another witness testified that he saw the appellants' car at a point some two blocks from the scene of the collision travelling at a rate of 45 to 50 miles per hour. The speed limit is 30 miles per hour "in the outlying or not thickly settled part" of the City. Code, art. 66½, Section 157(c).

The driver of the appellants' car told a very different story. His testimony was to the effect that he was driving at a speed of from 20 to 25 miles per hour and was "just in the intersection" when the appellee drove in front of him from the left. He admitted that he did not see the car until it was in front of him. For present purposes we must consider the evidence in the light most favorable to the appellee. Unless his failure to yield the right of way was a negligent and contributing cause of the collision, as a matter of law, the issue would be one for the jury.

The statutory right of way rule, now section 176, art. 66½ of the Code, provides that where traffic is not controlled by traffic lights or stop signs, all motor vehicles "shall have the right of way over other vehicles * * * approaching at intersecting public roads from the left, and shall give right of way to those approaching from the

right". The language is the same as that contained in section 209 of art. 56 of the Code of 1924, construed by this court in *Taxicab Co. v. Ottenritter*, 151 Md. 525, 531, 135 A. 587, 589. In that case, Judge Urner, speaking for the court (Judge Offutt dissenting) said: "While it was incumbent upon the plaintiff to respect the rule giving the right of way, at street intersections, to vehicles approaching from the right * * *, yet if the way for a safe distance was clear of traffic coming from that direction, he should not judicially be declared negligent in not providing against the possibility of collision with a car which could not come into dangerous proximity to his own unless it were unlawfully operated". The facts in that case were that the plaintiff did not see the favored vehicle at all, although he looked to his right for a distance of half a block before proceeding to cross at a speed of 15 miles per hour. There was testimony that the favored car was travelling over thirty miles per hour at the time of the collision, the speed limit being 20 miles per hour at that time. The court said that the plaintiff performed his duty to look, if he looked sufficiently far to discover that there was no traffic "within a distance that would be traversed by a vehicle driven at a speed permitted by the law". (151 Md. page 530, 135 A. page 589). It was also said (151 Md. page 533, 135 A. page 590): "It could hardly be said that the driver of the cab had the right of way, if he could not exercise it except by violation of the speed laws of the state".

The rule laid down in this case was followed and elaborated in *Jackson v. Leach*, 160 Md. 139, 152 A. 813; *Hendler Creamery v. Friedman*, 160 Md. 526, 154 A. 93; *Jersey Ice Cream Co. v. Bach*, 161 Md. 285, 157 A. 277; *Minch v. Hilkowitz*, 162 Md. 649, 161 A. 164; *Paolini v. Mill & Lumber Co.*, 165 Md. 45, 166 A. 609; *Yellow Cab v. Lacy*, 165 Md. 588, 170 A. 190; and *Yellow Cab v. Bradin*, 172 Md. 388, 191 A. 717. Compare *Warner v. Markoe*, 171 Md. 351, 189 A. 260. It was reiterated in the recent case of *Wlodkowski v. Yerkaitis*, 190 Md. 128, 132-133, 57 A. 2d 792, 794, where it was said: "* * *

the statutory right of way rule is regarded as a cautionary guide, rather than a peremptory command. The statutory rule qualifies the common-law rule giving the right of way to the first arrival at an intersection, but does not abrogate it. The width of the intersecting highways, the relative speed of the vehicles, and various other circumstances might materially affect the issue as to whether an asserted right of way should be recognized. The question whether a vehicle coming from the right is sufficiently near the intersection to have the right of way over a vehicle coming from the left must be determined from the circumstances in each particular case." Compare *Bush v. Mohrlein,* 191 Md. 418, 421, 62 A. 2d 301, 302.

The limited effect thus given to the right of way rule has not escaped criticism. In *Askin v. Long,* 176 Md. 545, 548, 6 A. 2d 246, 247, Judge Sloan, speaking for the court, said: "It must be admitted that, under the cases cited, the question, though by statute made one of law, usually resolves itself into one of fact". And see *Greenfeld v. Hook,* 177 Md. 116, 131, 8 A. 2d 888, 136 A. L. R. 1485. Nevertheless, although a more stringent rule, comparable to the "stop, look and listen" rule, has been applied in cases where traffic is controlled by lights (*Sun Cab v. Faulkner,* 163 Md. 477, 163 A. 194; *Gudelsky v. Boone,* 180 Md. 265, 23 A. 2d 694) or by stop signs (*Carlin v. Worthington,* 172 Md. 505, 192 A. 356; *Shedlock v. Marshall,* 186 Md. 218, 46 A. 2d 349; *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A. 2d 537), the rule announced in the *Ottenritter* case is still the law of Maryland, in the case of uncontrolled crossings.

The chief reliance of the appellants is upon *Askin v. Long, supra,* but that case is distinguishable upon its facts. The unfavored driver, who was the plaintiff, was denied recovery as a matter of law, but the court characterized his testimony as "so inconclusive, contradictory, and uncertain as not to be accepted as the basis of a legal conclusion". He had variously estimated the distance of the favored vehicle, when he first saw it, as 200 feet,

120 feet and 45 feet. While the plaintiff could not esti- mate the speed of the other car, "there was positive and uncontradicted evidence as to its speed", which was well within the limit. With no evidence of excessive speed, and no credible testimony as to the distance of the favored vehicle when the unfavored vehicle began to cross, no inference could be drawn that it was safe for the unfavored vehicle to proceed. Compare *Bush v. Mohrlein, supra.*

In the instant case the appellee first saw the other car at a distance of 120 or 125 feet, at a time when the front of his car was only 8 feet from the curb line of the intersection. To completely clear the intersection he would only have had to travel a distance of some 50 feet. Had the two cars been moving at the same speed, he would not only have been able to cross in safety but would have been 75 feet beyond the intersection before the other car reached it. We cannot say as a matter of law that it was his duty to stop under such circumstances. Nor do we think it was his duty to speed up, unless he had actual knowledge of the unmanageable and unlawful speed of the other car. As pointed out in *Askin v. Long, supra,* 176 Md. page 552, 6 A. 2d page 249; "One has to see a car go by to even be prepared to make a guess at its speed". Under the rule announced in the *Ottenritter* case, *supra,* we think the jury might properly find that he exercised due care under the circumstances.

The appellants argue that the favored car, at a distance of 120 feet, could have reached the point of impact, at a speed of 30 miles per hour, in the same time that the appellee's car, at 10 miles per hour, was covering 40 feet to the point of impact, and that the appellee was guilty of negligence as a matter of law in attempting to cross when the favored car was within such close proximity. If the front of the appellee's car was two-thirds of the way across the intersection at the moment of impact the distance it travelled would have been 26 feet and not 40. But in any event, the driver of the appellants' car had no absolute right to maintain maximum speed

under the circumstances. It was his duty to decrease his speed so as to avoid collision at the intersection, Code, art. 66½, Section 157 (e), to comply with the warning of the "slow" sign, and to look out for vehicles approaching from the left and entering the intersection. Moreover, there is nothing to support an inference that he was driving within the speed limit at the time he was first observed by the appellee. On the contrary, the testimony shows that for the last 40 feet up to the point of collision he had his brakes on hard enough to leave skid marks, that he pushed the other car sideways for 35 feet and did not come to rest for 73 feet from the point of impact. His speed at a distance of 120 feet must, therefore, have been greatly in excess of the speed limit, probably as great as the speed of 45 to 50 miles per hour actually observed within two blocks of the intersection. The jury may well have concluded that excessive speed was the primary factor which prevented him from slowing down in time to avoid the collision, and, conversely, that the appellee was not negligent in failing to observe the abnormal speed of a car which would normally have been at a safe distance.

The appellants also stress the failure of the appellee to keep looking to his right. But a driver cannot see in all directions simultaneously. It is his duty to look to his left and ahead as well as to his right. *Jackson v. Leach, supra; Chiswell v. Nichols*, 137 Md. 291, 112 A. 363. Under all the circumstances of this case, we think the trial judge was correct in overruling the motion for judgment N.O.V.

*Judgment affirmed with costs.*