## JOPPY *v.* HOPKINS

[No. 132, September Term, 1962.]

*Decided March 5, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Francis L. Young, Jr.,* with whom were *Thomas F. Jackson* and *Ronald F. McDonald, Jr.,* on the brief, for appellant.

*Charles W. Bell,* with whom were *Bell & Palamara* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The defendant, Melvin Joppy, appeals from a judgment in accordance with the verdict of a jury in favor of the plaintiff, Minnie E. Hopkins, in a suit for personal injuries tried in the Circuit Court for Montgomery County.

The plaintiff had had some difficulty with her automobile which she was driving and in which she was bringing several companions home after they had attended a funeral on January 22, 1961. The car began "cutting off" soon after leaving the church. There was testimony by the plaintiff and one of her passengers, Mrs. Hammond, that there was a smell of burning and that steam or smoke, according to Miss Hopkins, smoke according to Mrs. Hammond, came up into the car from underneath the hood. It is not clear how far the car had traveled

from the church when this steam or smoke developed. (The plaintiff's testimony seems to indicate that the trouble was an overheated radiator.) At all events, the steam or smoke was coming into the car as Miss Hopkins was driving east on Norwood Road at or near its intersection with Georgia Avenue and was approaching the Hammonds' house, which is some five hundred feet east of that intersection. Miss Hopkins decided to stop and Mr. Hammond's assistance was to be sought. He was apparently in the house.

There had previously been a good deal of snow. Norwood Road had been plowed by a snow plow to a width of fourteen feet according to the testimony of a disinterested witness, a police officer. Even the plowed portion of the road was not clear of snow and ice and was slippery. The plaintiff elected not to stop her car on her right hand side, the south side, of Norwood Road, but pulled across to the north side of the road and stopped in front of the Hammonds' house. She gave as her reasons for so doing, the absence of a shoulder on which to park on the south side, better visibility of her car to others driving along the road, because of a curve, and the existence of an area substantially cleared of snow between the edge of the paved road and the fence along the front of the Hammond property. After she stopped the car, Mrs. Hammond got out and Miss Hopkins got out, both of them, according to their testimony on the right side of the car—that is, into or at the edge of the plowed part of the highway. Mrs. Hammond started into the house; Miss Hopkins went to the front of her car, opened the hood and was about to unscrew the radiator cap when she was struck from behind by the defendant's car, which the defendant was driving west along the north side of the highway. He claimed that his view had been obstructed by another car and that he had been blinded by the sun in the west when the car ahead of him turned to the left. He also claimed that the approach of another car going east prevented him from turning left to avoid Miss Hopkins and her car and that, though he was not going fast and applied his brakes, he could not stop and slid forward striking her and her car.

A major question of fact in dispute in the case was whether Miss Hopkins had parked her car wholly off the macadamized

portion of the highway or had parked partly or entirely on that portion of the highway. Her testimony at the trial was positive that she had parked entirely off it—that she was so close to the Hammond fence that she could not open the door on her (the driver's) side of the car. In this testimony she was corroborated by Mrs. Hammond, but was contradicted by the defendant and his wife and at least to some extent by the police officer.

The defendant sought to present and proffered the testimony of an insurance adjuster for Miss Hopkins' insurer to the effect that she had stated shortly after the accident that she did not recall where her automobile was on the roadway. The trial judge thought there was danger of the matter of insurance being injected into the case, with the risk of a mistrial resulting therefrom, and he also was of the opinion that the proffer was not sufficiently definite and that counsel for the defendant really did not have sufficient information to proffer what the witness would testify. Our study of the record leads us to a different view from that of the learned trial judge. We think that what we have stated above as the defendant's proffer shows that the evidence sought to be elicited was pertinent to a factual issue in the case (actually the principal one), both as bearing upon the credibility of the plaintiff as a witness and as an admission against interest. We further note that counsel stated that the witness in question (a Mr. Harp) had stated to him that he had talked with the plaintiff about the accident and that another employee of the same insurance company had informed counsel that Mr. Harp had filed a written report stating that the plaintiff had said to him "that she did not recall where her automobile was actually on the roadway" and that counsel believed (but would have to refer to his notes) that it included a statement "that at least a part of her automobile was on the surface of the roadway."

Later, in overruling the defendant's motion for a new trial, the trial judge, without, as he pointed out, the benefit of the transcript before him, expressed the view that the defendant was engaged in a fishing expedition with regard to the testimony of this witness. Both at the trial and at the argument for a new trial, reference was made to a refusal by some superior of Mr.

Harp in the plaintiff's insurance company to permit him to give a statement except in court and under subpoena. The trial court pointed out that Mr. Harp's testimony could have been required by subpoena under discovery procedure, and commented adversely in denying a new trial upon the defendant's not having taken his deposition in discovery proceedings and assigned this as a further reason for denying a new trial. We think the "fishing expedition" comment not supportable on the record, and we know of no obligation to take the testimony of a possibly hostile witness, who declines to give a statement unless under subpoena, as a condition to being entitled to call such a witness. We are, of course, not passing upon the denial of a motion for a new trial.

We think that a sufficient foundation was laid for the admission of Mr. Harp's testimony in contradiction of the plaintiff's testimony. The trial court limited the scope of the question put to the plaintiff on cross-examination with regard to a conversation with Mr. Harp, evidently with a view to avoiding the mention of insurance. With details of time and place omitted and without identification of Mr. Harp, the question was put whether she remembered talking to Mr. Harp and telling him that she did not know where her car had been parked. She denied having made such a statement to him. In the light of the restrictions imposed, we think that the requirement of laying a foundation for impeachment was sufficiently met. As to the usual requirements, see *Brown v. State,* 72 Md. 468, at 475, 20 A. 186; *Caledonian Ins. Co. v. Traub,* 83 Md. 524, at 535, 35 A. 13; *Pindell v. Rubenstein,* 139 Md. 567, at 574, 115 A. 859; *Moxley v. State,* 205 Md. 507, at 516-17, 109 A. 2d 370, and cases therein cited; *Campbell v. Patton,* 227 Md. 125, at 141-42, 175 A. 2d 761.

That evidence of a prior contradictory statement on a material issue is admissible to impeach the credibility of a witness (assuming a proper foundation to have been laid), is shown by all of the cases just cited. Though it seems unnecessary to add further citations of authority, we may add one other recent case, *Shivers v. Carnaggio,* 223 Md. 585, at 592, 165 A. 2d 898.

Likewise, no extensive citation of authorities to demonstrate

the admissibility of admissions against interest seems necessary. See *Lambros v. Coolahan,* 185 Md. 463, at 468, 45 A. 2d 96; *Terry v. O'Neal,* 194 Md. 680, at 688, 72 A. 2d 26.

Being of the opinion that the defendant's proffer was sufficient, that a proper foundation had been laid for the introduction of Mr. Harp's testimony and that the proffered testimony was admissible both to impeach the plaintiff's testimony on a material issue and as an admission against interest, we conclude that the judgment must be reversed because of the exclusion of this testimony and that the case must be remanded for a new trial.

It seems appropriate to add at this point that on a new trial it would appear to be perfectly possible both to lay the foundation for producing Mr. Harp's testimony and to examine him as a witness without going into any question of insurance. If, in spite of care to avoid the injection of this matter into the case, some reference to it or inference of its existence should develop, this might not prove a fatal defect. On this subject generally see *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 607-11, 143 A. 2d 627; *Yellow Cab Co. v. Bradin,* 172 Md. 388, at 397, 191 A. 717; *State, Use of Cavanaugh v. Arundel Park Corp.,* 218 Md. 484, at 488-89, 147 A. 2d 427; *McCormick v. St. Francis de Sales Church,* 219 Md. 422, at 431, 149 A. 2d 768.

Since the case is to be remanded for a new trial we shall, as permitted under Rule 885, comment briefly on other points raised on this appeal which seem likely to arise thereat.

The appellant claims that he was entitled to an instruction that the plaintiff's failure to call Mr. Hammond as a witness created a presumption that his testimony would have been unfavorable to her as to whether or not the snow had been shoveled away between the Hammonds' fence and the paved part of the roadway. (Actually, the appellant-defendant had summoned him and he was in the court house, but neither side called him.) His testimony, if favorable to the plaintiff, would have been cumulative to that of the plaintiff herself and of Mrs. Hammond. We do not think that the evidence at the first trial was such as to indicate that it would not have been merely cumulative, and hence we think there was no error in denying the

instruction sought. *United Rys. & Elec. Co. v. Cloman*, 107 Md. 681, 695, 69 A. 379. See also 2 *Wigmore on Evidence* (3rd Ed.), § 288.

The appellant also contends that there was no evidence in the case to warrant the court's giving an instruction based upon § 244 (b) of Art. 66½ of the Code (1957). This section exempts the driver of a disabled vehicle from the requirements of § 244 (a) for parking (outside a business or residential district) entirely off the paved or improved portion of the highway when practical, and in any event so as to leave a clear width of twelve feet of such part of the highway, with a clear view of the parked vehicle for at least two hundred feet in each direction upon the highway. A disabled vehicle under § 244 (b) is one "disabled while on the paved or improved or maintraveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position." In the light of the plaintiff's own testimony—particularly with regard to choosing the place where she would park — we have considerable doubt that her car was so disabled as to make § 244 (b) applicable under the doctrine of *Coastal Tank Lines v. Kiefer*, 194 Md. 81, 69 A. 2d 790. There, a large truck became disabled because of a broken fuel pump. The driver's only choice in parking it, as he did by using the starter to move it at all, was between parking on the paved highway or pulling off onto a soft shoulder where the truck would have become mired. The case was held to be within the exception in favor of disabled vehicles under what was then § 189 (b) of Art. 66½ of the Code (1947 Cum. Supp. to the 1939 Ed.) and is now § 244 (b). "Impossible" was not treated as meaning an absolute, physical impossibility, but only what was obviously impractical in the circumstances.

In the instant case, if the plaintiff's contention that her car was stopped entirely off the paved roadway was correct, § 244 (a) would not have been applicable and there would have been no need to invoke § 244 (b); and surely it would not have been impossible to park off the highway. If, however, her car was actually parked wholly or partly on the paved highway, § 244 (a) would have been applicable, unless the exception of §

244 (b) came into operation. We assume that on a new trial the question of disablement and impossibility of parking off the paved highway will be more fully developed, and we think that it would serve no useful purpose for us now to express a definitive opinion on this matter based upon the evidence presented at the first trial.

A further contention of the appellant is, in substance, that because of the absence of any prior indication that such a contention was to be made, testimony of a witness that she noticed the odor of alcohol on the breath of the defendant just after the accident, should not have been admitted, can scarcely arise at a second trial after what occurred at the first. We see no occasion to express any opinion on it. Because of the unlikelihood of its recurrence, it also seems inappropriate to pass upon a controversy over what was said in oral argument to the jury.

> *Judgment reversed and case remanded for a new trial; costs of this appeal to be paid by the appellee.*

PRESCOTT, J., dissents.