CHARLES A. RUTLEDGE and JOHN R. RUTLEDGE, trading as C. A. RUTLEDGE & BRO. *vs.* JOHN Q. MCAFEE, and others, trading as MCAFEE BROTHERS.

*Construction of Contract—Pleadings—Demurrer—Non pros.*

In January, 1888, R. & Bro. agreed to furnish McA. & Bros. in payment for merchandise, certain canned sugar corn of the pack of 1888, at 95 cents per dozen. The contract was in writing and contained the following clause: "95c. price of corn guaranteed, *i. e.,* should any of said pack of 1888 be sold for less, said McA. Bros. to have the advantage of such abatement, and at same rate." HELD:

That this guaranty was not violated by the sale to McA. Bros. by R. & Bro. in October, 1888, of the same brand of corn at 75 cents per dozen, for a special consideration, no other sale of said corn at that price having been made by them.

Where issue has been joined on two pleas, and a replication to a third plea is ruled bad on demurrer, with leave to the plaintiff on his motion to plead over, a judgment of *non pros.* is sustainable on the failure to file a new replication; although a final judgment for the defendant on the demurrer, while there were outstanding issues of fact on the first and second pleas and replications thereto, would be a fatal error.

But if the ruling upon the demurrer is reversed on appeal, and the replication thereby sustained, the judgment of *non pros.* for want of a replication must also be reversed.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, and MCSHERRY, J.

*Edgar H. Gans*, for the appellant.

*J. Edward Stirling*, and *John Henry Keene, Jr.*, for the appellees.

IRVING, J., delivered the opinion of the Court.

The appellants being farmers and dealers in canned goods, bought of the appellees certain fertilizers in January, 1888. In payment for the fertilizers, the appellants agreed to furnish certain canned sugar corn of the *pack of* 1888 at ninety-five cents per dozen. The contract was in writing, and contained this language: "95 c. price of corn guaranteed, *i. e.* should any of said pack of 1888, be sold for less, said McAfee Bros. to have the advantage of such abatement, and at same rate." The *brand* contracted to be delivered was "No. 2 standard sugar corn."

In October, 1888, the appellees, who were commission merchants, bought some corn from the appellants for

the price of which this suit is brought, and the appellees pleaded set-off as their third plea, in which they set out the agreement and guarantee in the first contract of January, 1888, and aver that in consequence of the plaintiffs (appellants) having sold some of their corn at 75 cts. per dozen, they are entitled to abatement from the price of the corn delivered under the first contract at 95 cents per dozen, to seventy-five cents per dozen, which reduces the plaintiffs' claim to ten dollars and thirty-five cents, which is tendered in full settlement of accounts.

To the pleas of never indebted and never promised, as alleged, the plaintiffs joined issue, and as to the plea of set-off the appellants replied specially, admitting the sale to the appellees of two hundred and twenty cases of corn at 75 cts. per dozen, as alleged in defendants' plea, but aver "that said sale was made at said price as a concession to the defendants, and in consideration of the fact that the defendants purchased of the plaintiffs the lot of Bald Eagle corn mentioned in the contract of October 10th, 1888; and the plaintiffs further say, they have not sold, since the contract made with the defendants, bearing date January 31st, 1888, any of the C. A. R. & Brothers' brand of corn of the pack of 1888, for a price less than ninety-five cents per dozen, except only the special lot of two hundred and twenty cases; and the plaintiffs further say, that it is not true, as stated in said third plea of the defendants, that the plaintiffs have ever agreed to take a price less than ninety-five cents per dozen for any corn of the said C. A. R. & Brother's brand, excepting only as to the lot of two hundred and twenty cases above mentioned."

The appellees joined issue on the replication to the first and second pleas, and demurred to the replication to the third plea, or plea of set-off. The demurrer involves a construction of the guarantee set up in the

plea, with the defendants' view of its proper construction; and replied to by appellants so as to indicate their view of its interpretation. We think there can be no doubt that the guarantee was exacted and given for *protection* to the appellees. Whatever that *protection* was, gives a key to the construction of the contract. It can not be supposed that the appellees were securing a guarantee that the vendor would never sell them at a lower price than was charged in the contract of January, 1888. People *always buy at as low a figure as they can;* for as consumers or as dealers they make or save by it. Looking at the situation of the parties respectively, and the subject-matter of the contract, (as we must do to understand their agreement,) it would seem very clear that what the appellees were exacting and securing, was protection against the sale to other people at a less price than to the appellees, in order that the appellees might not be undersold. The appellees were not getting money for their fertilizers sold the appellants. They took goods at a certain price which they had to turn into money. If other dealers in the same goods were allowed to have the goods, (canned corn) at a price less than the appellees paid for it in their deal, the appellees would be compelled to sell at a less price, and thus fail to get cash value for their phosphates. The contract therefore was a guarantee to keep up the price at 95 cents per dozen, in order that the appellees might sell at that price, at least, and get value for their phosphates. When therefore the appellants sold appellees some of their corn at 75 cents, as a *special concession to them,* because of their purchase of another brand of goods, there was no violation of the guarantee and no injury was done to the appellees. In fact, they are benefited instead, for the demurrer admits that a sale at that figure was made to no one else, and, as a consequence, they would be enabled to get even 95 cents per dozen, as that was

the ruling price per dozen in the trade generally. Taking the facts as pleaded in the replication to be true, as the demurrer concedes them to be, it would be unreasonably distorting the meaning of the contract to hold its language as entitling the appellees to the abatement on price of goods sold them January, 1888. In making the contract in January, 1888, the parties never contemplated, as we think, the construction now contended for by the appellees. If the appellants had so understood the contract, the sale at 75 cts. in October never would have been made, it is very certain.

We think the Superior Court erred in sustaining the demurrer to the amended replication. The record shows that after the ruling sustaining the demurrer, leave was granted on motion for the plaintiffs to plead over. This was but in effect giving leave to amend the replication. Subsequently, on motion, the plaintiffs were *non prossed.* This judgment must have been given, because another replication was not filed. It does not appear that the plaintiffs were put under a rule to a particular time, but we must assume the Court was acting in pursuance of, and conformably to, its rules. If the judgment had been made final in favor of the defendants when the demurrer was sustained, while there were outstanding issues of fact, as there were on the first and second pleas and replications thereto, it would have been fatal error. *Walter vs. County Commissioners of Wicomico County*, 35 *Md.*, 385. That however was not the case. It was a judgment of *non pros.* which did not prevent the plaintiffs from suing again on the same cause of action, and the judgment of *non pros.* would be sustainable if the Court had not erred in striking down the replication as bad; but as we hold the amended replication to be good answer to the defendants' plea of set-off, if the facts be true as conceded by the demurrer, there was a good

pleading in and no default to be enforced by judgment
of *non pros.*   The judgment must be reversed.

*Judgment reversed, and
new trial ordered.*

(Decided 5th February, 1890.)