# PHILIP LANGE, ET AL. *v.* BOARD OF EDUCATION OF CECIL COUNTY

[No. 10, April Term, 1944.]

256

*Decided May 3, 1944.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Eugene Frederick* for appellants.

*Robert D. Bartlett,* with whom were *J. Kemp Bartlett,
Jr.,* and *Bartlett, Poe & Claggett* on the brief, for ap-
pellees.

BAILEY, J., delivered the opinion of the Court.

This is the second appeal in this case. The first appeal
was taken by the plaintiff, appellee in the present appeal,
from a judgment for the defendants entered after the
demurrer to the second amended declaration was sus-
tained without leave to amend. This judgment was re-
versed and the case remanded. The opinion of this Court,
by Chief Judge Sloan, is reported as *Board of Educa-
tion of Cecil County v. Lange* in 182 Md. 132, 138, 32 A.
2d 693. Thereafter the case was tried in the Superior
Court of Baltimore City, by the Judge thereof, without
a jury. From a judgment in favor of the plaintiff for
$839.46, the defendants have appealed under Trial Rule
9 (c) of the General Rules of Practice and Procedure,
1941.

The first question raised in the present appeal is one of practice. The Court declined to pass upon it in the former appeal, as it was not properly before the Court on appeal by the plaintiff. The first amended declaration contained two counts, the first count on a labor and service bond and the second count on the performance bond considered by this Court in the prior appeal. On November 3, 1941, demurrers to each count of the amended declaration were sustained, with leave to the plaintiff to file a second amended declaration within fifteen days. Upon petition of the plaintiff filed on April 21, 1942, the time for the filing of the second amended declaration was extended until April 30, 1942. Both the original and the first amended declaration had been filed by the Board of Education of Cecil County, Maryland, to the use and benefit of International Business Machines Corporation and to the use and benefit of such other persons having claims herein. On April 25, 1942, the plaintiff filed its second amended declaration, eliminating the words "and to the use and benefit of such other persons having claims herein" and the first count of the first amended declaration. The allegations of the second amended declaration were, otherwise, exactly the same as those contained in the second count of the first amended declaration. On April 28, 1942, the defendants filed a motion *ne recipiatur* to the second amended declaration and a motion for a judgment of *non pros.* Both motions were overruled.

The defendants now contend that the motion *ne recipiatur* should have been granted for two reasons: First, because the second amended declaration was filed too late; and second, because it did not constitute an amendment, but was a mere refiling of a pleading to which a demurrer had already been sustained.

The general rule, as stated in *Poe's Pleading and Practice* (Tiffany's Edition), Vol. 2, Sec. 360, is that "if the defendant's demurrer to the declaration be sustained, he will be entitled to final judgment, unless the plaintiff, upon proper leave obtained, amends his declaration; in

which event, the defendant will be required to proceed *de novo,* either by demurrer or plea to the amended declaration". The same author also says, at Sec. 362, that "judgment of *non pros.* may be entered up against the plaintiff for his default in filing a declaration or any other pleading, according to the course of the court, when duly laid under rule to do so". Under this authority the defendants could have moved for a judgment of *non pros.* at any time from November 18, 1941, until April 21, 1942, the period that the plaintiff was in default, but this they failed to do. The motion for judgment of *non pros.* was not made until after the filing of the second amended declaration and this was too late. It was within the discretion of the trial court to allow the filing of the second amended declaration even though the time originally allowed for the filing of the same had elapsed. The statute upon this subject is very liberal, allowing amendments, in cases of jury trial, at any time before the jury retire to make up their verdict, and in cases of demurrer and other trials before the court, at any time before judgment is entered. Art. 75, Sec. 39, Code 1939; *Gisriel v. Burrows,* 72 Md. 366, 373, 20 A. 240; *Scarlett v. Academy of Music,* 43 Md. 203, 208. The case of *Rutledge v. McAfee,* 72 Md. 28, 18 A. 1103, relied upon by the appellants, applies the general rule laid down by Mr. Poe, in Sec. 362, which we have quoted above, but it is not applicable to the present case. It held that a judgment of *non pros.* was sustainable on the failure of the plaintiff to file a new replication. But we can find no authority holding that the judgment must be entered against a plaintiff in default, in the absence of a seasonable motion by the defendant.

This brings us to the defendants' second contention. The defendants base this contention upon the case of *Musher v. Perera,* 162 Md. 44, 158 A. 14, 15. This was a case under the Speedy Judgment Act of Baltimore City. After the defendant had filed pleas supported by affidavit and a certificate of counsel, as required by the act, the plaintiff obtained leave to file an amended declaration.

The plaintiff then filed a declaration identical with that originally filed. The defendant then moved to dismiss the case on the ground that no amended declaration had been filed within the time allowed by the court. That motion was overruled, whereupon the defendant declined to plead to the so-called amended declaration. The plaintiff then moved for a judgment by default "for want of plea", which was entered. On appeal the defendant contended that the so-called amended declaration was not in fact an amended declaration, that merely refiling it could not change its character as an original declaration, and that, having pleaded to it once, he was not required to plead to it again. The Court sustained this contention and held that, as the defendant had filed proper pleas to the original declaration, he was not in default, and the court was without jurisdiction to enter the judgment by default. In the opinion it is stated that the "word 'amendment' necessarily connotes a change of some kind, ordinarily for the better, but always a change or alteration." The second amended declaration in the instant case meets this requirement. There are two definite alterations of the first amended declaration, namely: the first count on the labor and service bond is entirely eliminated, and the second count is amended to the extent of naming International Business Machines Corporation as the sole equitable plaintiff. And on appeal it has been held that, so amended, the declaration sets forth a good cause of action. We, therefore, cannot see how the defendants have been injured by the ruling on the motion *ne recipiatur*.

It is further contended by the defendants that the performance bond does not extend its protection to the equitable plaintiff who contracted with E. F. Higgins & Company, Inc., to furnish and install complete equipment for electrical and program clocks and fire alarm and return call systems in the school to be erected at Chesapeake City by Lange Brothers under a written contract with Board of Education of Cecil County, the said E. F. Higgins & Company, Inc., having subcontracted with

Lange Brothers for certain electrical work. In reviewing the declaration in the former appeal and considering only the facts stated in the declaration, Judge Sloan said (182 Md. 132, 137, 32 A. 2d 693, 695) : "The bond here sued on was conditioned for the 'prompt and faithful payment to any person furnishing labor or material for said work.' It was not limited to obligations for labor or materials contracted for by the contractor, obligor, but to 'any person' providing 'labor or material for said work.'" The Court's conclusion was that on such a bond the surety is never released until all claims for labor and materials covered by the contract are satisfied.

While at that time the Court had only the bond before it, we now have not only the bond but also the contract and specifications. In the case of *Hospital for Women of Maryland v. United States Fidelity & Guaranty Co.*, 177 Md. 615, at page 618, 11 A. 2d 457, at page 459, 128 A.L.R. 931, this Court enunciated the following principles to be applied in the construction of bonds similar to the one with which we are now concerned, namely: (1) That, since the advent of corporate bonding companies, the old doctrine that a surety is a favorite of the law and that a claim against him is *strictissimi juris* has been greatly minimized; (2) that the liability upon bonds executed by surety corporations has been liberally extended beyond that to which sureties were formerly held; (3) that the liability of the surety upon his bond is dependent upon his covenants and agreements and that an ordinary conventional bond is a simple contract; and (4) that the cardinal rule in the interpretation of bonds, as well as of other contracts, is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. See cases there cited.

In *Mayor and City Council of Baltimore v. Maryland Casualty Co.*, 171 Md. 667, at page 672, 190 A. 250, at page 253, it was held "that in interpreting contracts effect must be given to the intention of the parties, and

that when the contract is written that intention must be found in the language employed where it is clear and unambiguous." See cases there cited.

And it has been held in numerous cases that a bond is to be construed in connection with the contract whose performance it secures, in determining the right of laborers or materialmen to recover thereon. *Standard Accident Insurance Co. v. Simpson,* 64 F. 2d 583; *Bristol Steel & Iron Works v. Plank,* 163 Va. 819, 178 S.E. 58, 111 A.L.R. 50; *Annotations,* 118 A.L.R. 62, 77 A.L.R. 47.

Where the contract incorporates as a part of itself the specifications, and the contract is, by reference, incorporated as a part of the bond, the contract, the specifications and the bond must all be construed together. *Hollerman Manufacturing Co. v. Standard Accident Insurance Co.,* 61 N.D. 637, 239 N.W. 741. This is the situation applicable to the instant case.

The specifications, in paragraph 10 of the general conditions, headed "Security for Faithful Performance", provide for delivery to the owner of an executed performance bond and an executed labor and materialmen's bond, both with corporate surety, and both in the form provided elsewhere in the specifications. The paragraph then contains the following provision: "Provided that on contracts for supplies only, involving no labor on the site this requirement will not apply unless expressly so stated." The defendants contend that, applying the rules of construction above stated, the equitable plaintiff cannot recover on the performance bond, as it falls within the class of persons who are excepted from the protection of the bond under the above proviso. But with this contention we cannot agree. The second amended declaration alleges and the evidence in the case clearly shows that the contract of the equitable plaintiff with the Higgins Company was "to furnish and install complete equipment for electrical and program clocks and fire alarm and return call systems in the said schoolhouse as specified in the plans and specifications for said building." The witness Simmons, who was the Baltimore

manager of International Business Machines Corporation, testified that he was personally familiar with the electrical systems to be supplied by his company for the school at Chesapeake City, that the price for the equipment installed in the Chesapeake City school was $775, and that he knew that the equipment was installed in said school. The witness Fleming testified that he was employed by International Business Machines Corporation as installation and maintenance man; that he was at the school on October 6 and October 11, 1939; that he was familiar with the installation of the electric and program clock system and fire alarm system, supplied by his company and installed in the school; that he assisted the electrical contractor in getting the blue prints straightened out and in determining what wires would be necessary and checked the systems after the installation was made; and that he made his final check on November 3, 1939, at which time the systems were working properly. This evidence satisfactorily proves that the contract of the equitable plaintiff did involve labor on the site and that it was not a contract for supplies only. The contract was to "furnish and install" the equipment, and installation necessarily involved labor on the site. And the evidence shows that the labor involved in the installation was performed by the equitable plaintiff. The contract was, therefore, not excluded by the proviso from the protection of the performance bond and the trial court properly entered a judgment for the unpaid portion of the contract price.

*Judgment affirmed, with costs.*