JACOBSON, t/a CHECKER CAB ASSOCIATION, INC., et al. *v.* JULIAN, et vir

[No. 325, September Term, 1966.]

550

*Decided May 3, 1967.*

The cause was argued before Hammond, C. J., and Horney, Oppenheimer, Barnes and Finan, JJ.

*Matthew Swerdloff,* with whom was *Myer E. Grossfeld* on the brief, for appellants.

*Marvin Ellin,* with whom was *Leonard P. Baker, Jr.* on the brief, for appellees.

Horney, J., delivered the opinion of the Court.

As the result of being dragged in the street by a taxicab from which she had alighted, the passenger and her husband brought this action for personal injuries and other damages against the cab owner and his driver. The plaintiffs-appellees are Viola T. Julian and Michael J. Julian. The defendants-appellants are Martin M. Jacobson, trading as Checker Cab Association, and Rody D. Hicks. The jury returned a verdict for the plaintiffs and upon the entry of judgments absolute, the defendants appealed. The numerous questions on appeal concern the pleadings, the *voir dire* question, the motions for directed verdicts, the requests for instructions, the instructions to the jury and the motions for a mistrial.

The accident occurred in the afternoon of a day in May of 1964 near the "Italian Kitchen" restaurant operated by Viola Julian in that area of Baltimore City known as "Little Italy." On that day she had spent the afternoon shopping and had purchased several items which were placed in separate packages of varying sizes. She hailed the taxicab on Howard Street and asked to be taken to her home and place of business at High and Fawn Streets. When the cab turned into High Street

(which is one way north) the passenger, who was wearing a long raincoat, began sliding, with her arms full of packages, toward the left side of the cab expecting to step out onto the west curb of the street, but when the driver stopped along side of her home, automobiles parked at the curb necessitated double parking and made it impossible to open the left rear door. The passenger then slid over to the right side of the cab in order to get into the street from the right rear door. She had some difficulty, due to the armful of packages and the tendency of the door to swing to, but finally managed to get the door open. After she got out, and as the cab door closed, her raincoat was caught between the frame and the door.

According to the plaintiff, she was not certain whether or not the cab driver helped her open the door, but she was positive that when the door was three-fourths shut the driver leaned over and pulled the door toward him "with a click." After he did so, she noticed that her coat was caught. She screamed, dropped her packages and tried to grab the handle of the door, but before her hand touched the handle, the driver drove away and she was thrown off her feet. That was all she remembered until she "came to."

According to the defendant driver, the passenger did not request him to open or close the door and he had not done so. After she had paid him and gotten out of the cab, he made a note of the time and fare, looked over his shoulder, saw her to the rear of the cab and drove away. Although he had told a bystander that he had heard the passenger tell someone while she was lying on the street that her coat had caught in the cab door, he later denied talking to anyone except the police officer and an eye witness. He also denied ever opening or closing the door for the passenger.

A distinterested eye witness testified that as he was waiting in his automobile directly behind the taxicab for the driver to discharge the passenger, he noticed that the cab door opened and closed "a little" and that she had trouble "exiting from the cab" before she finally got out. He saw the passenger try to close the door with "her elbow or something." As she did so, the cab driver reached toward the back door "and then the door shut." He then noticed that her coat was caught "on the

door," that the driver "pulled off suddenly" and that as he did the passenger "lunged forward" and the cab "drug her several feet."

The police officer, who questioned the driver at the scene, testified that the driver had told him that the passenger had been dragged as a result of her clothing catching in the back bumper of the taxicab after she had left the cab. When the officer questioned the passenger at the hospital as to the occurrence of the accident, she told him that the driver closed the door of the cab on her coat.

The procedural facts and such other circumstances as may be required will be stated when and as the several questions presented by the appeal are considered.

(i) *The Pleadings*

The appellants, assuming that they were entitled to a summary judgment, contend that the trial court (1) erred in not *forthwith* deciding and granting their motions for summary judgment and (2) abused its discretion in permitting a review of that discretion and in granting the petition of the appellees to file an amended declaration five days after hearing the first motion for summary judgment.

The original declaration stated that the plaintiff closed the door of the cab after alighting and, noticing that her coat was caught in the door, attempted to free it and being unable to do so was hurled upward, fell and was dragged in the street. But it did not refer to the double parking of the cab, the having to alight on the street side and the difficulty she had in opening the door because of the packages she was carrying at the time of alighting. Nor did the declaration refer to the fact that the cab driver reached over and pulled the door to after the passenger had partially closed the door.

When the first motion for summary judgment was filed, the only papers on file, so far as the docket entries show, other than the declaration and general issue plea, were certain interrogatories and answers. There were no depositions, admissions or affidavits.

At the hearing, the law motions judge held the first motion *sub curia* to permit the plaintiffs to file a memorandum in op-

position to the granting thereof. After the memorandum was filed, the plaintiffs petitioned for leave to file an amended declaration. Leave to amend was granted and the amended declaration was filed. This was followed by a second motion for summary jugment and the dismissal of both motions. No objection was made, nor any exception taken, to the filing of the amended declaration.

While Maryland Rule 610 d 1 provides that when the moving party is entitled to judgment as a matter of law, the court should render judgment forthwith, that does not mean that entry of judgment may not be delayed for a reasonable time when, as here, the circumstances require it. Nor does the rule, as subsection d 5 states, limit or affect the power of a court to permit amendment of the pleadings at any stage of the proceedings, which, pursuant to Rule 320 d 1 (b), should be freely granted in order to promote justice. And see *Lange v. Board of Education,* 183 Md. 255, 37 A. 2d 317 (1944) ; *Stoewer v. Porcelain En. & Mfg. Co.,* 199 Md. 146, 85 A. 2d 911 (1952) ; *Co. Com. of Q. A. Co. v. C. J. Langenfelder & Son,* 237 Md. 368, 206 A. 2d 710 (1965). There was no error in refusing the motions for summary judgment or in permitting amendment of the declaration.

### (ii) *The Voir Dire Question*

The appellants, asserting that a juror to be competent need not be devoid of all beliefs and convictions, contend that it was error to propound a question on *voir dire* as to whether the prospective jurors had fixed opinions with regard to lawsuits involving personal injuries.

The specific question propounded by the trial court was—

"Does any member of this jury panel have any fixed opinion regarding law suits arising from alleged personal injuries that would prevent you from giving a fair and impartial verdict, based solely on the evidence in the case?"

Obviously, the question was asked in an effort to exclude such jurors as had fixed opinions with regard to suits for personal injuries or were prejudiced as a result of prior involvement in such suits, but the appellants, arguing that the minds

of the jurors were directed at the very outset of the trial toward the injury aspect of the case and away from the cause of the accident, claim that the *voir dire* question predisposed of the issues of liability, fault and responsibility. We disagree. Nor do we agree that the phrase "law suits arising from personal injuries" was improper and inapplicable where the issues to be determined were not limited to personal injuries. In *Grossfeld v. Braverman,* 203 Md. 498, 101 A. 2d 824 (1954), where a similar question on *voir dire* was propounded, we held that the question was not only properly framed but, being directed at the existence of bias and prejudice, was well within the discretion of the court. Also see *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955). *Cf. Mason v. State,* 242 Md. 707, 218 A. 2d 682 (1966). The *voir dire* question was proper.

### (iii) *The Motions For Directed Verdicts*

The appellants contend that the trial court erred in refusing to direct a verdict in their favor (a) at the close of the case for the plaintiffs and (b) at the conclusion of the whole case.

The contention is based on the claim that the plaintiffs failed to prove any negligence on the part of the defendants in that neither of the witnesses (the passenger and the eye witness) could testify that the driver closed the cab door and, to the contrary, proved that the passenger was negligent in that she either closed the cab door on her coat or let it get caught on the bumper of the cab, but these suppositions, for that is all they are, overlook the fact that the testimony clearly indicated that there were conflicting contentions which presented a question for the jury, as the trier of fact, to decide.

While there was evidence on behalf of the appellants to the effect that the cab driver had neither opened nor closed the door for the passenger and that he had seen her behind the cab before he drove away, there was also the evidence of the passenger, corroborated by the disinterested eye witness, to the effect that the cab driver had reached over, grabbed the door and shut it.

A party is not entitled to a directed verdict in his favor under Rule 552 a unless the facts and circumstances are such as to permit of only one inference with regard to the issue pre-

sented. *Smack v. Jackson*, 238 Md. 35, 207 A. 2d 511 (1965). This is so, because if there is any legally relevant and competent evidence to prove the plaintiff's case, a directed verdict should not be granted. *Plitt v. Greenberg*, 242 Md. 359, 219 A. 2d 237 (1966) ; *State use of Bowman v. Wooleyhan Transport Co.*, 192 Md. 686, 65 A. 2d 321 (1949). The refusal of directed verdicts was proper.

(iv) *The Requests For Instructions*

The appellants contend that the trial court erred when it refused to grant the requested instructions set forth in its fourth, eleventh and twelfth prayers which read as stated below.

The fourth prayer :

"The defendants pray the court to instruct the jury that if a plaintiff to a suit is able to produce a witness who may have knowledge of the facts and fails to call that witness or explain the witness' absence, then there is a presumption that the party's testimony would be unfavorable to the plaintiff."

The eleventh prayer :

"The defendants pray the court to instruct the jury that if they find from the evidence that the driver of the taxicab drove off after the door of his vehicle was closed; and that at that time, he could not have seen that the lower part of the plaintiff's long raincoat was caught in the door because of the location of the coat and that the plaintiff had placed herself in a position of peril; then he had a right to assume that the plaintiff had alighted safely and the verdict of the jury must be for the defendants."

And the twelfth prayer :

"The defendants pray the court to instruct the jury that if from the evidence they find that the plaintiff, after alighting from the taxicab, closed the right rear door of the taxicab and that the door closed upon her coat, catching it between the door and the door post, then they must find that it was the plaintiff's act which

set in motion a chain of events resulting in her own injuries and in the absence of her own act such would not have occurred, and therefore, their verdict must be for the defendants."

As to the *fourth prayer,* the claim that it was incumbent upon the plaintiffs to produce the persons they listed as being "at or near the scene" in response to an interrogatory of the defendants is without substantial merit. In the first place, the interrogatory sought the names of the persons who were at or near the scene, not the names of the persons who had witnessed the accident. In addition to this, the claim is based on the supposition that had such persons been called as witnesses they might have testified to circumstances other than those which would have been cumulative. As opposed to this, it appears that the named persons were not called by the plaintiffs because, not being eye witnesses, having arrived at the scene after the accident had occurred, their testimony at most, could have done no more than corroborate the testimony of the eye witnesses who were called.

While in some circumstances it is true that if a party, without a satisfactory explanation, fails to produce the testimony of an available witness on a material issue, it may be inferred that the testimony would be unfavorable to the party who fails to call him, *Critzer v. Shegogue,* 236 Md. 411, 204 A. 2d 180 (1964), such an inference is not drawn from the failure of a party to produce cumulative and corroborative evidence. *United Rys. & Elec. Co. v. Cloman,* 107 Md. 681, 69 Atl. 379 (1908); *Joppy v. Hopkins,* 231 Md. 52, 188 A. 2d 545 (1963).

As to the *eleventh* and *twelfth* prayers, the claims of error are wholly without merit for the reason that the trial court gave its own adequate instructions as it had authority to do under Rule 554 b 1.

Probably (a) because the *eleventh* prayer, in addition to stating no theory as to how the raincoat got caught in the cab door, ignored the testimony of both the passenger and the eye witness to the effect that the driver had reached toward the rear door and closed it and (b) because the *twelfth* prayer sought an instruction which ignored a determination of whether the

558

driver or the passenger closed the cab door on the raincoat, the court *properly* instructed the jury that—

"The crucial question as to the cause of the accident in question will be determined by your finding from the evidence as to how the plaintiff's coat became attached to some part of the defendant vehicle immediately prior to her injury. [1] If you find from the evidence that the defendant driver closed the right rear door of his taxicab upon part of the plaintiff's coat and thereby caught the coat between the door and the body of the cab, then, under those circumstances, the defendant was obliged, in the exercise of ordinary care, to ascertain that the plaintiff was free of the taxicab before he drove off. [2] If you find that the plaintiff's coat was caught while the driver was the person closing the door, under these circumstances, if you find that the defendant's failure to ascertain that the plaintiff was free of the cab was the cause of the plaintiff's injury, without any contributory negligence on the plaintiff's part, your verdict then must be in favor of the plaintiff. [3] On the other hand, if you find from the evidence that the plaintiff closed the door herself on her own coat, and if you further find that the defendant driver, in the exercise of due care, could not see that the plaintiff's coat was caught in the door, then the defendant driver had the right to assume that the plaintiff had alighted safely from the cab and, under those circumstances, you must find that the plaintiff was *guilty* of contributory negligence and your verdict must be in favor of the defendant."

This instruction (as far as it went) not only correctly stated the law from the standpoint of the defendants as well as the plaintiffs, but the last sentence, bracketed as "[3]", in substance, though not word for word, embodied the eleventh and twelfth prayers of the defendants. Aside from this it seems to us that had the jury been instructed exactly as requested in the eleventh and twelfth prayers such instruction could well nigh have been tantamount to a directed verdict for the defendants.

### (v) *The Instructions Of The Court*

The appellants contend that the trial court erred in instructing the jury (a) as to the degree of care owed by the cab driver to the passenger and (b) as to the possibilities the jury could consider in arriving at a verdict.

The contention as to the degree of care is based on the claim that the passenger, having paid the fare, gotten out of the cab into the street and closed the door, was no longer a passenger but a pedestrian standing in the street between intersections. Again, the appellants ignore the further fact that the passenger, in the process of alighting from the cab, had not yet (because her raincoat was caught in the door) completely freed herself from the cab.

In this state, taxicabs are common carriers and drivers thereof not only owe a duty to be watchful and alert at all times, but are bound to exercise the highest degree of care consistent with the nature of their undertaking and this includes an obligation to stop a sufficient length of time to enable a passenger to alight in safety. *United Railway Co. v. Weir,* 102 Md. 286, 62 Atl. 588 (1905) ; *Brooks v. Sun Cab Co.,* 208 Md. 236, 117 A. 2d 554 (1955) ; *Retkowsky v. Baltimore Transit Co.,* 222 Md. 433, 160 A. 2d 791 (1960). The instruction as to the degree of care was proper.

The contention as to the factual possibilities the jury could consider is likewise without merit. Apparently the contention is based on the claim that the original charge did not adequately present an aspect of the defense to the effect that "the chain of events was started by the plaintiff herself in attempting to close the door with her elbow" and on the claim that the supplemental charge, in that it referred to *three possibilities,* was as vague and indefinite as the original charge.

As a result of the meeting of counsel and the trial judge in chambers for the purpose of considering exceptions to the original charge, the judge returned to the court room and gave an additional charge—

"You will recall that I gave you instructions concerning three possibilities [since two of the possibilities "[1]" and "[2]" used different language to express

the same principle of law, there were actually only two possibilities in the original charge—see p. 9 of this opinion] that you may find from the evidence; the first possibility being that you may find from the evidence that the defendant cab driver closed the door and thereby caught the lady's coat in the door. * * *. The second possibility [this was stated as the third "[3]" possibility in the original charge—see p. 9 of this opinion] is that the lady herself closed the door and caught her own coat in the door, between the door and the body of the cab, * * *. Now, there is the third possibility * * * that the lady had completely freed herself from the cab and was not attached to it in any way by her clothing or otherwise, and that she was standing somewhere near the cab when the cab drove off, and [as to this] you may find from the evidence that while the cab was driving off, her clothing then for the first time got caught on some part of the taxicab and caused her to be thrown to the ground. Under those circumstances, * * *, if you find that the accident occurred in that fashion, * * *, then you are instructed that under those circumstances the lady's nearness to the cab and allowing her coat to be caught, as a matter of law, makes her contributorily negligent, and that the driver driving off after the lady had been completely separated from the cab was not negligent, so that if you find the third possibility to be the way that the accident happened, your verdict must be in favor of the defendant and against the plaintiff."

It is apparent that the original charge to the jury as supplemented by the additional charge was neither indefinite nor vague. Moreover, the claim that the original charge in which, according to the appellants, the "possibilities" apportionment-wise were twice as favorable to the appellees as to the appellants cannot be said of the supplemental charge for it is apparent that the instruction as a whole is more favorable to the defendants than was the original charge. Even if it is assumed that the court somewhere along the line should have taken in-

to consideration the fact that the passenger had closed the cab door with her elbow, the appellants took no exception to the neglect of the court to do so.

So long as the law is fairly covered by the instructions, as was the case here, we will not disturb them. *Casey v. Roman Catholic Archbishop of Baltimore,* 217 Md. 595, 143 A. 2d 627 (1953). And see *Fisher v. Baltimore Transit Co.,* 184 Md. 399, 41 A. 2d 297 (1945).

## (vi) *The Motion For A Mistrial*

The final contention of the appellants is that the trial court erred in refusing their request for a mistrial based on alleged improprieties in the closing argument of the plaintiffs to the jury.

The claim is that counsel for plaintiffs made several improper, immaterial and prejudical arguments. The claim lacks merit. When counsel for plaintiffs said to the jury that the defendants could have had the plaintiff-passenger examined by any doctor they chose, the court promptly informed the jury that this was improper and instructed it to disregard the statement. Likewise, when reference was made to the fact that the plaintiff-husband (who did not testify) was going to have to enter the hospital in a few days, counsel for plaintiffs was again admonished by the court. The other claims of impropriety to the effect that it was wrong for counsel to estimate the money value of the case and to inform the jury that this was the passenger's "one and only day in court," even if raised below, would not, without more, have warranted a mistrial. Whether or not the trial court should either declare a mistrial or advise the jury to disregard an improper argument is a matter within the sound discretion of the trial court which will not be disturbed absent a clear showing of abuse. *Leach v. Metzger,* 241 Md. 533, 217 A. 2d 302 (1966) ; *Yellow Cab Co. v. Bradin,* 172 Md. 388, 191 Atl. 717 (1937). Clearly, there was here no abuse of discretion.

*Judgment affirmed; appellants to pay the costs.*