UNITED STATES FIDELITY & GUARANTY CO. ET AL. *v.* HOUSING AUTHORITY OF BALTIMORE CITY, USE OF THE MONUMENTAL BRICK AND SUPPLY COMPANY, ET AL.

[No. 80, October Term, 1954.]

(Three Appeals In One Record.)

*Decided February 21, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS and HENDERSON, JJ.

*J. Kemp Bartlett, Jr.,* for United States Fidelity & Guaranty Co., appellant.

*Sol C. Berenholtz,* for Construction Co. of Maryland, Inc., appellant.

*Harrison L. Winter*, with whom were *Seymour O'Brien, R. Samuel Jett* and *R. Frederick Jett*, on the brief for Housing Authority of Baltimore City, to the use of The Monumental Brick & Supply Company, and Housing Authority of Baltimore City, to the use of The Brooklyn Corporation, appellees.

*Jesse Slingluff, Jr.*, with whom were *Frank T. Gray* and *Piper & Marbury*, on the brief, for Housing Authority of Baltimore City, to the use of Baltimore Brick Company, appellee.

HENDERSON,. J., delivered the opinion of the Court.

This appeal is from three summary judgments entered in the Superior Court of Baltimore City in favor of three corporations supplying building materials to the firm of C. & C. Construction Company, which company had entered into a contract with Construction Company of Maryland, Inc., the general contractor for the construction of dwelling units for the Housing Authority of Baltimore City. In connection with the general contract, a payment bond was executed on which the United States Fidelity & Guaranty Company was surety. The question presented is whether the general contractor, and the surety upon the bond of the general contractor, are liable to pay for materials furnished to a sub-contractor. This, of course, involves a construction of the bond.

On its face, the language of the bond would appear to be broad enough to establish liability. The undertaking was to "make payment to all persons supplying labor and materials in the prosecution of the work provided for in said contract." Cf. *Women's Hospital v. U. S. F. & G. Co.*, 177 Md. 615; *Board of Education v. Lange*, 182 Md. 132; and *Lange v. Board of Education*, 183 Md. 255. See also the cases collected in notes 77 A. L. R. 21 and 118 A. L. R. 57. It may be noted that the bond was drawn on a standard form intended for use in connection with government work under the Miller Act, 40 U. S. C. §270a. Of course, the bond in the in-

stant case is not a statutory bond, but the fact that it was labeled as a Miller Act bond is not without significance in seeking the intention of the parties as to the meaning of the language used. *Hartford Accident & Ind. Co. v. Net & Twine Co.*, 150 Md. 40, 46. The cases under the Miller Act, *supra*, and its predecessor, the Heard Act., 40 U. S. C. §270, construing the language "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract", have uniformly held that the coverage extends to suppliers of material to sub-contractors. *United States, Use of Hill v. American Surety Co.*, 200 U. S. 197, 203, cited in *Trimount Dredging Co. v. U. S. F. & G. Co.*, 166 Md. 556; *Mankin v. U. S.*, 215 U. S. 533; *U. S. v. James Baird Co.*, 73 F. 2d 652; *MacEvoy v. U. S.*, 322 U. S. 102; *U. S. v. Munsey Trust Co.*, 332 U. S. 234.

The appellants contend, however, that the bond, the contract and the specifications must all be read together, citing *Lange v. Board of Education, supra*, 183 Md. 255, 261. When so read, they contend that their liability is limited. The appellees contend that the case is inapplicable because the court was there dealing with a performance bond and there was an express incorporation by reference. Assuming, without deciding, that a clear limitation contained in the contract and specifications might narrow the scope of the coverage implicit in the language of the bond, we find no such limitation in the instant case.

At the outset, it appears that the exact form of bond was specified in the contract, and the condition stated was that "the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract." This form of bond was prescribed in Part I, Division IX, of the specifications. The invitation for bids, part I, Division I, required the successful bidder to furnish a "satisfactory" payment bond. It seems clear that no other form of bond would have been acceptable. Moreover,

in Part I, Division XI, under Section 47, Warranty of Title, after stating that the Contractor agrees that neither he nor any person, firm or corporation furnishing any material or labor shall have a lien, provides: "Nothing contained in this paragraph, however, shall defeat or impair the right of such persons furnishing materials or labor under any bond given by the Contractor for their protection * * *. The provisions of this paragraph shall be inserted in all subcontracts and material contracts and notice of its provisions shall be given to all persons furnishing materials for the work * * *."

The appellants strongly rely upon language contained in Part I, Division II, Instructions to Bidders, Section 17, that the successful bidder shall furnish a payment bond "for the payment of all persons, firms, or corporations to whom the Contractor may become legally indebted for labor, materials, tools, equipment, or services, of any nature, employed or used by him in performing the work. Such bonds shall be in the forms included in the Specifications * * *." They argue that this language limits the coverage to those persons whom the general contractor contracts to pay. But there are several answers to this argument. In the first place, we think the instructions to bidders were not a part of the contract, although included in the specifications. The contract itself, in Article 3, states that the contract "shall consist of the following component parts: (a) this instrument (b) general conditions (c) special conditions (d) general scope of work (e) technical specifications (f) drawings. This instrument, together with the other documents enumerated in this Article 3, which said other documents are as fully a part of the Contract as if hereto attached or herein repeated, form the Contract." There follows a statement that in the event of conflict in any component part, the part first enumerated shall prevail. The Instructions to Bidders is not a component part of the contract. The appellants seek to read it in by reference to the definition of "specifications" in Part I, Division XI, general conditions, which states that the term means "the volume

which includes, and the term shall include, the Instructions and Forms (consisting of the Form * * *, Instructions to Bidders * * *)." They also point to Article I of the contract, Statement of the Work, which provides that the Contractor shall perform and complete all work required for the construction of Part "A" of Cherry Hill in strict accordance with the specifications, addenda and drawings, "which said specifications, addenda and drawings are incorporated herein by reference and made a part hereof." We think, however, that the specifications are incorporated only for the purpose of defining the work. The extent of coverage would naturally fall under Article 3.

In the second place, we think there was no necessity for including instructions to bidders in the contract at all, as that was only a preliminary step. Looking forward to the actual integration of the contract, the bidders were informed that the measure of the legal liability of the Contractor for materials "used" by him was to be found in the bond prescribed. Moreover, in the general scope of the work, Section 3, Responsibilities of Contractor, it is stated that "except as otherwise specifically stated in the Contract, the Contractor shall provide and pay for all materials * * * and all other services and facilities of every nature whatsoever necessary to execute the work." Thus the Contractor is charged with the legal responsibility of seeing that all persons supplying materials in the prosecution of the work are paid. Reading all of the clauses together, we find nothing in the language relied on that would take precedence over the language of the contract, or operate as a restriction thereon. If there is an inconsistency it would seem that the language of the integrated contract and bond would prevail. If the language is read in the light of the Contractor's assumption of liability, there is no inconsistency. Any other construction would nullify rights that the sub-contractors might properly assume that they had, by reason of notice that they could assert no lien, but must look to the bond for their protection. The clause "except

as otherwise specifically stated", refers, not to the extent of coverage, but to Section 4 immediately following which provides that certain work, such as supplying water, highways, street lights and drainage, are not within the undertaking of the general contractor.

The appellants also rely upon the provisions of Section 9 of the contract, General Conditions, giving the Housing Authority the right to require the general Contractor to furnish releases or receipts from persons furnishing materials to it, and to withhold amounts due from the Contractor to any materialman. There are other provisions of Article 1 of the contract, however, which give the contractor the same rights as against sub-contractors as the Housing Authority has against it. Thus the general contractor could protect its liability under the bond by simply verifying that the sub-contractor has paid suppliers of materials. The argument that the appellees' construction might lead to double payments is without merit.

The appellees moved to dismiss the appeals on the ground that the appellants failed to print in their appendix all of the pertinent parts of the documents in question. As we have dealt with the case on its merits, it is unnecessary to elaborate on our reasons for overruling the motion. We may note, however, that the appellants furnished a detailed statement to the appellees of what they proposed to print, and there was no suggestion that it be supplemented; that the appellees have printed what they desired us to read, and it appears, except in one instance, to be merely a duplication in more extended form, of matter already printed. We think there was room for a reasonable difference of opinion as to the materiality of the matter omitted by the appellants

*Judgments affirmed, with costs.*